DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

### DURING THE YEAR 1905.

---

## Chicago Railway Equipment Company v. National Hollow Brake Beam Company et al.

### Gen. No. 12, 017.

1. RENT—*what constitutes payment of.* Held, from the particular evidence in this case that a payment of rent in securities was made.

2. LEASE—*when forfeiture of, will not be sustained.* A forfeiture of a lease will not be sustained in equity where the rent for the non-payment of which the attempted forfeiture was made had been paid in securities which had been accepted by an officer of the lessor corporation who had been vested with discretionary power.

3. ESTOPPEL—*when operates against corporation.* Where the stockholders of a corporation are estopped from asserting a particular claim, the corporation is likewise estopped.

Bill for injunction. Appeal from the Superior Court of Cook County; the HON. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed and decree here. Opinion filed December 8, 1905.

Statement by the Court. On March 21, 1902, the Chicago Railway Equipment Company, appellant, filed its bill in the Superior Court of Cook County to enjoin the National Hollow Brake Beam Company and Henry D. Laughlin, appellees, from re-entering upon the premises occupied by appellant and removing it or any of its property therefrom, and to restrain Laughlin, as president of the Brake Beam Company, from acting under the power con-

(533)

ferred upon him by the lease, from seizing the books and papers of appellant, and from undertaking to secure and deliver to the Brake Beam Company an assignment and transfer of patents and inventions for which applications for patents are pending, choses in action or any other property belonging to appellant.

The material allegations of the bill are to the effect that on January 1, 1893, appellant took possession of all the property, business and good will of the Brake Beam Company under an agreement called a lease dated December 8, 1892. Under this agreement appellant was to pay the Brake Beam Company the sum of $65,000 per year in semi-annual installments for the period of fifteen years. The lessee assumed the payment of $50,000 of the mortgage bonds of the lessor and the interest thereon. At the expiration of the lease, the lessee was to return the property leased, and if it had not already done so, the amount of cash received from the lessor or the balance thereof still unpaid, the outstandings turned over to it, together with the amount of the cash price as per inventory of the stock and materials on hand, manufactured and unmanufactured, turned over by the lessor to the lessee. The lessee had the right from time to time to pay back to the lessor before the expiration of the lease the whole or any portion of the money received by it, or that may be collected on the outstandings in payments of not less than $5,000. As such payments were made from time to time the rents should be reduced thereafter per annum in an amount equal to six per centum on the amount or amounts so paid back.

The lease provides for a forfeiture in case the lessee should fail to pay any installment of rent for three months after it became due, the forfeiture to be declared after giving a written notice of such intention to the lessee, and after receiving such notice the lessee has three months from the date of the receipt of the notice to made good its default. The lease further provides for a re-entry and the removal of the lessee, in case of forfeiture, and gives the lessor the right to take possession of the premises together

with the machinery, and stock, and material manufactured and unmanufactured, all cash on hand in bank or else. where, notes, accounts, choses in action, all books and papers and evidences of indebtedness, and provides that the lessor shall thereupon succeed immediately to the right, title and interest of the lessee. The lessor is to account to the lessee, and after liquidating all claims of the lessor against the lessee, it shall pay over to the lessee any balance in its hands. It is further provided therein that the lessor shall become the owner of all patents and inventions owned by the lessee with all claims for infringements of any such rights, and makes the president of the lessor the attorney in fact of the lessee to execute and deliver to the lessor all necessary assignments and transfers thereof, without any charge in any sum whatever for the same.

On March 16, 1898, appellee Laughlin sent a communication to appellant referring to a certain proposition which he had submitted in April, 1897, relating to a reduction of the rent reserved in the lease. In this communication Laughlin submitted a new proposition upon the same subject, and among other things said that the item of $106,287.90 referred to in the original proposition had been returned to appellee Brake Beam Company, and that appellant had made good to the Brake Beam Company all the moneys acquired by appellant through the lease, but that appellant still stands charged with machinery and office furniture accounts amounting to $16,294.90. Laughlin then proposed to appellant that if it would pay to the American Trust & Savings Bank of Chicago for his account $107,000 cash and $300,000 of its negotiable bonds, he would have its rent reduced from the amount it was then paying to $5,000 per annum thereafter, and that until he secured such reduction he himself would pay to the Brake Beam Company all rent over and above the sum of $5,000 per annum. This proposition was accepted by appellant, and appellant paid the money and turned over the bonds in the fall of 1898, in accordance with the agreement.

Appellee Laughlin in the meantime had entered into an

agreement with the Brake Beam Company whereby it consented to the reduction of appellant's rent to $5,000 per annum in consideration of certain agreements on the part of Laughlin to purchase at par all the stock of the Beam Company held by all stockholders other than himself.

A certificate was thereupon given by the Beam Company to the Equipment Company evidencing an agreement to the reduction of the rent to $5,000 beginning January 1, 1899, which was to be paid in semi-annual installments of $2,500 each.

On December 31, 1898, the balance of the rent due for that year amounting to the sum of $21,500, was paid by appellant to the Beam Company by turning over a note of appellee Laughlin for $7,500, a note of the El Nayal M. & M. Company for $4,000, a note of the Hammond Manufacturing Company for $5,000 and a certificate of the receiver of the Monterey & Mexican Gulf Railroad for $4,500.

On December 18, 1901, appellee Laughlin delivered a notice to appellant that the turning over of the last three items was no payment in fact of the rent, and unless the balance of $13,500 represented by said papers with six per cent. interest from December 31, 1898, was paid within three months the appellee Brake Beam Company intended to forfeit the lease.

The bill sets up efforts to have the controversy settled amicably; that the capital stock of appellant is $2,500,000, and worth at least $1,000,000; that in the development of its business it has acquired a large number of patents; that it has accumulated a surplus of more than $100,000, and that it has paid dividends for the year 1901 at six per cent. on its capital stock; that the Brake Beam Company threatens to take forcible possession of its property and to secure an assignment of all its letters patent, and thus irreparably damage and destroy its property and business, and prays for an injunction against a forfeiture of its lease, etc.

The amended answer of appellee, the Brake Beam Company, denies that the rent in dispute has been paid, or that

the three obligations for $13,500 were taken or accepted as cash or otherwise by the Brake Beam Company; alleges that the pretended transfer of the three obligations was attempted to be made by Edward B. Leigh, who was at the time thereof general manager of the Equipment Company; that Leigh had prior to the time of the pretended transfer used the moneys of the Equipment Company for his own private purposes, and for such moneys so taken the three obligations had been given, and that on December 31, 1898, the said claims were worthless. At that time Leigh was in charge of the books of the Brake Beam Company, and being about to become treasurer of the Beam Company, fraudulently, for the purpose of imposing said worthless claims upon the Beam Company, and in the interest of the Equipment Company, and without the knowledge of the officers and directors of the Beam Company, made certain entries on the latter company's books, pretending to transfer to it said worthless claims in part payment of the installment of rent due December 31, 1898; that Leigh had no authority to make such entries; that they were not known to the Brake Beam Company, and as soon as known to it were by it repudiated; that the Equipment Company was ignorant of such pretended transfer, but was afterwards informed thereof, and of Leigh's fraud, and then ratified the fraud by insisting on the transfer.

In the fall of 1902 leave of the court was obtained to serve further notices upon the Equipment Company for alleged non-payment of rent; and on September 29, 1902, the Beam Company served two notices upon the Equipment Company, claiming that of the installment of rent due December 31, 1898, there was still unpaid the sum of $1,200, and of the installment of rent due for the year 1897 there was unpaid the sum of $6,337. The $1,200 item represented six per cent. interest on two notes of $10,000 each made by Atkins & Milligan, and one Burgess, and turned over on December 31, 1897, to Calhoun, treasurer of the Brake Beam Company. The $6,337 item was for six per centum interest upon $106,287.90 which had not been turned over until the end of the year 1897.

A supplemental bill was then filed by appellant setting up the service upon it of these notices, charging that these claims were fictitious, and an injunction was granted thereon restraining the Beam Company from declaring a forfeiture of the lease pursuant to the notices.

The supplemental bill was also answered by appellees, appellee Laughlin setting up in his pleadings the same facts as the Beam Company's answer, and the case being at issue was referred to a master for his findings of fact and conclusions of law thereon. Upon the report of the master being made, appellant filed objections which were ordered to stand as exceptions. The exceptions were overruled by the court and the master's report was confirmed, the court in its decree finding in effect that the transfers of the two notes for $10,000 each and the three items amounting to $13,500 were fraudulent, and decreed that there is due from appellant to the Beam Company the sum of $19,624.50 with interest and gave appellant ten days from date of the decree to pay the money into court for the benefit of the Beam Company, and that in default of such payment appellees are given leave to proceed with the forfeiture of the lease, and the injunction be dissolved.

H. H. C. MILLER, W. S. OPPENHEIM and DAVID S. GEER, for appellant.

SHOPE, MATHIS, ZANE & WEBER and EDDY, HALEY & WETTEN, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This record presents the question whether, under the facts, the National Hollow Brake Beam Company ought to be allowed to treat the note of the El Nayal M. & M. Co. for $4,000, the Hammond Manufacturing Company draft for $5,000, the certificate of the Receiver of the Monterey & Mexican Gulf Railroad for $4,500 as not received in part payment of the rent due December 31, 1898, and the Atkins & Milligan notes for $20,000 as not received in part

payment of the $106,287.90 which was to be returned to the Brake Beam Company in 1897, and to declare forfeitures of its lease to appellant on the ground that the rents reserved have not been paid.

There is no material controversy between the parties as to the facts and conditions existing prior to the rent reduction agreement in 1898. Nor is there any controversy as to the relations of Leigh and Laughlin to the Brake Beam Company subsequent to that agreement, or as to their relations to each other until June, 1900. Laughlin and Leigh owned substantially all the stock of the Beam Company, except 1,325 shares owned by Mr. Kern, and were the executive and finance committee of the Beam Company, and directed its affairs and business.

The master found, and we think correctly, that after the rent reduction agreement was made the Equipment Company paid and adjusted all its obligations under the lease up to and including the year 1896, and in doing so had paid upwards of $810,000; and that at the time of the filing of the bill in this case its assets were upwards of $1,600,000 in value; that on March 16, 1898, Laughlin submitted a formal proposition to the Equipment Company regarding the reduction of its rent from $65,000 to $5,000 per annum, in which it was recited that the $106,287.90 balance had been returned by the Equipment Company to the Beam Company; that after January 1, 1899, the Equipment Company promptly paid the sum of $5,000 per annum to the Beam Company as it fell due; that a certain note for $4,000 of the El Nayal Milling & Mining Company had appeared in the transactions of the Beam Company prior to the turning over of the note of the El Nayal M. & M. Company in controversy here. This note was for moneys advanced to the El Nayal Company on account of Leigh, Laughlin and Burkhardt, and was divided up between them subsequently, Laughlin and Leigh giving their notes for $1,000 and $2,000 respectively, and Burkhardt his note for $1,000. The latter note is paid, but the Beam Company still holds Laughlin's and Leigh's notes.

The evidence shows that Laughlin and Leigh were interested in the Noonday Mining Company operating in Oregon. This company obtained certain machinery from the Hammond Manufacturing Company which was installed and operated in the Oregon mine. The Hammond Manufacturing Company item here involved represented a loan by Leigh to that company of $5,000. Laughlin refused to become a party with Leigh in making the loan, but at Leigh's request prepared the papers therefor which consisted of a draft drawn by the Hammond Company upon Leigh accompanied by a note signed by the Hammond Company and F. B. Hammond, payable to Leigh, certain securities being pledged as collateral to the note by a collateral agreement.

It appears from the evidence that notes representing large sums of money borrowed from the Equipment Company, made by Laughlin and Leigh, were received by the Brake Beam Company as cash, through Laughlin and Leigh, constituting the executive and finance committee of the Beam Company; that Laughlin and Leigh for the Beam Company loaned its moneys on paper purporting to be the receiver's certificates of the Monterey & Mexican Gulf Railroad Company to the amount of $20,000, which certificates were other than the $4,500 certificate here in question.

Edward B. Leigh testified that in the latter part of December, 1898, he mentioned to Laughlin the three items here in controversy and his (Laughlin's) note for $7,500 as being held by the Equipment Company, and that Laughlin said to him: "Turn them over to the National Hollow Brake Beam Company; that is where they belong    *    *    *    as a part payment of the rent." This testimony is denied by Laughlin.

From the journal of the Beam Company under date of December 31, 1898, it appears that the Equipment Company is credited with $21,000 for the following notes received from it: El Nayal M. & M. Co., $4,000; Hammond Mfg. Co., $5,000; Monterey & Mex. G. R. R., $4,500, and

H. D. Laughlin, $7,500. This credit is posted in the ledger of the Beam Company to the credit of the Equipment Company. The entries are made in the handwriting of Leigh. When Leigh made these entries he put the notes and certificate in a separate envelope and placed the envelope with the Brake Beam Company papers.

It clearly appears from the evidence, we think, and the master finds, that the Brake Beam Company was used by Leigh and Laughlin to carry their personal matters when it suited their convenience.

It is perhaps worth noting at this point that Laughlin testified that Robertson represented to Leigh and himself that he was authorized by the Federal Court of Mexico at Monterey to borrow for the Monterey & Mexican Gulf Railroad Co., for which he claimed to be the receiver; that he also said to them that if they would consent to make the loans he would buy brake beams of the National Hollow Brake Beam Company for some freight cars he was having built; and that Leigh and Laughlin agreed to loan on these certificates (four other certificates, not the one in question), if they had the certificate of the court that they were authorized. And Laughlin went to Monterey to look into the matter of these certificates and approved of these loans.

Laughlin and Leigh had many and quite large transactions in which they were interested, and in some of these their interests were joint. Leigh, by mutual consent and long practice, kept the books of account and the papers and documents pertaining to these interests, and their relations were of such character that Leigh had the custody of many of Laughlin's private papers and securities.

In and through the rent re-adjustment Laughlin had acquired substantially all the capital stock of the Beam Company except Leigh's stock and Kern's 1,325 shares. On February 8, 1900, Laughlin received a statement of account from Leigh dated February 1, 1900, purporting to state the account between them for the preceding ten years. In the account was a statement of the assets of the Brake Beam

Company showing the following, among other items, as accounts not good or not available: Monterey & Mexican G., $25,158.48; El Nayal M. & M. Co., $4,000; Hammond Mfg. Co., $7,353.81.

By a letter dated October 4, 1900, Leigh explained to Laughlin the El Nayal M. & M. Co. note, saying this amount was advanced for the enterprise, and that Laughlin had agreed to share it with Leigh by absorbing it in the Beam Company.

On November 7, 1900, an auditing committee of the Beam Company was appointed and later reported that it found among the assets of the company the El Nayal, Hammond and Monterey items here in question. The same items appear in the trial balance of the Brake Beam Company dated December 31, 1898, and also in the trial balance of January 18, 1899. The same items appear in the trial balance of the company dated February 1, 1900, and in the trial balance of October 1, 1900.

A copy of the auditing committee's report above referred to was received and spread at large on the records of the proceeding of the board of directors of the Beam Company in 1900 and a copy of it was furnished to Laughlin.

In the trial balances above referred to there also appeared among the assets of the Beam Company the Atkins and Milligan notes here in question.

There is evidence tending to show, and the master finds, that the fund of $106,287.90, which was recommended to be returned to the Brake Beam Company in January, 1897, was left with the Equipment Company, on the responsibility of Laughlin and Leigh, who were the managing officers and the executive and finance committee of the Brake Beam Company until the latter part of the year 1897. The report of J. L. Calhoun, treasurer of the Brake Beam Company, dated January 19, 1898, shows that this item had been received by the Beam Company at that time. That Laughlin knew that the items in controversy had been turned over to the Brake Beam Company not later than March, 1900, appears from his letter to Leigh asking for the date of the El Nayal note, and when the Brake Beam

Company acquired it, and stating that he was sufficiently familiar with the other items to enable him to figure intelligently.

From this evidence and other evidence in the record of perhaps equal or greater importance which we have not taken time to refer to, we are convinced that Laughlin and the other stockholders of the Brake Beam Company knew of the turning over to the Beam Company of the securities in controversy here, and that Laughlin, at least, assented thereto. Laughlin and Leigh were the finance committee and had authority to act for the Beam Company, sufficient at least to bind the company of which they were the principal owners, by accepting the securities in payment of rent. At the meeting of stockholders in January, 1898, the treasurer reported the payment of the $106,287.90 to the stockholders, and this report was approved by a formal vote. This payment either in form or substance was not questioned until December, 1901, a period of three years after the transaction. It was then questioned, apparently, not for the purpose of bringing a suit for the rent alleged to be due against a large and prosperous corporation possessing assets of over $1,000,000, but for the purpose of making it the basis of a forfeiture of the lease. We are justified by the evidence in believing that the transfer of these securities would never have been questioned but for the bitter quarrel and disagreement that afterward arose between Leigh and Laughlin, for both of them had been using the Beam Company for their individual purposes without any warrant or authority in law and in a manner which would have afforded abundant basis for legal complaint against them on the part of other stockholders, if there were any, who had not consented to such use. Brown v. DeYoung, 167 Ill. 549.

Upon the facts shown by the record a court of equity will not allow the Brake Beam Company after three years of acquiescence in a payment of rent accepted by its stockholders and officers, to repudiate their action and declare a forfeiture of the lease. In equity the stockholders are in substance the corporation, and what will estop the stock-

holders will estop the corporation. If the stockholders have no standing in equity for relief sought or rights claimed for their benefit they cannot obtain such relief or maintain such rights through or in the name of the corporation. In other words, equity looks to the substance and not the form; it looks behind the corporation to the shareholders who are the owners and beneficiaries and ascertains whether these ultimate beneficiaries have any standing to demand a legal right insisted upon. Thomp. Corp. Vol. 4, p. 4479; 1 Morawetz Priv. Corp. 1; Swift v. Smith, 65 Md. 428; Home Fire Ins. Co. v. Barber (Neb.), 60 L. R. A. 927.

But it is to be remembered that Laughlin had discretionary authority of the broadest latitude in the conduct and management of the business and affairs of the Beam Company after the rent reduction agreement with him had been made. This was embodied in his proposition to the company which was accepted by it. Laughlin's acquiescence in the payment of rent by delivery of the securities in question here for so long a time with full knowledge, as we think, of such transfer must be regarded in determining the issues in this case, as the act of the corporation itself. So that without appealing to the equitable principles above mentioned, and quite apart from considerations based thereon, it would be inequitable and unjust to permit a forfeiture of the lease upon the grounds stated in the notices and relied upon by appellees. After carrying through the rent reduction agreement upon the basis of the partial payment of the $106,287.90 by the turning over of the Atkins & Milligan and Burgess notes and the payments of large sums of money and the issuing of the bonds by appellant called for by that agreement, appellant is entitled to insist that the Brake Beam Company is bound by the rent settlement, and that it cannot now say that the payment is invalid.

The evidence in the record proves the averments of the bill. Appellant is entitled to the relief prayed. The decree is reversed, and a decree granting an injunction will be entered here.

*Reversed and decree here.*