**Chicago Railway Equipment Company, Appellee v. National Hollow Brake Beam Company and Henry D. Laughlin, Appellants.**

**Gen. No. 16,001.**

1. COURTS—*stare decisis.* Where in previous litigation arising out of the same transaction the fundamental questions in a case have been determined by the Supreme Court, such determination is binding on the Circuit and Appellate Courts.

2. INJUNCTIONS—*when preliminary continued pending appeal.* Where an injunction against forfeiture of a lease is granted on condition that complainant, lessee, makes certain payments within a time fixed, and complainant appeals, an attempt by defendant to enforce a forfeiture after the time fixed for payment, and pending the appeal, is ineffective, when the right to an injunction is finally determined in favor of complainant, even though there is no formal order continuing the preliminary injunction granted in the cause, in force, pending the appeal.

3. INJUNCTIONS—*against competition.* Where the lease of a manufacturing plant and business provides that in case no forfeiture has taken place the lessor will not engage in competition for a period of five years after its termination, an injunction enforcing such provision is properly limited to the period fixed, and a prayer

for an injunction against competition "at any time" is properly denied.

4. GOOD WILL—*lease construed as sale.* Where a lease of a manufacturing plant and business is in effect a conditional sale of the property, patents, and good will of the business, to become absolute in case of the expiration of the term of the lease, without its forfeiture, the lessee upon complying with the terms of the agreement is entitled to an injunction restraining the lessor from the use of the trade name or otherwise interfering with the good will of the business transferred.

5. INJUNCTIONS—*necessity that complainant do equity.* Where upon the theory that an injunction against forfeiture of a lease has not been continued pending an appeal, defendant lessor declares a forfeiture, and thereafter refuses to accept payments tendered under the lease, the lessee, on his right to a continuance of the lease having been finally determined, will be required to make such payments to the lessor as a condition to the enforcement of rights based on the lease.

6. DEPOSITS IN COURT—*disposition.* Where on a bill by lessee to enforce the lease, complainant tenders certain payments under the lease into court, and they are refused by defendant on the ground that the lease has been forfeited, the sums tendered are properly ordered to be paid to the clerk and, on a finding for complainant, to defendant, without prejudice to the right of defendant to appeal.

7. APPEALS AND ERRORS—*release of errors.* When sums tendered into court by complainant, and refused by defendant, are ordered by the court to be paid by the clerk to defendant without prejudice to the right of defendant to appeal, the acceptance of such sums by defendant will not prevent the consideration of his appeal.

8. CONTRACTS—*modification.* Where the amount of rental to be paid by a lessee corporation is based in part on the amount of its indebtedness to the lessor corporation, an agreement for a reduction of the rental fixed in the lease is, while unrescinded, a bar to the collection of a greater amount, though at the time the reduction was negotiated, the intermediary erroneously stated that the indebtedness was fully paid, while the payment, in fact, was partially made up of worthless notes.

9. RES ADJUDICATA—*matters included.* Where on a bill by a lessee to enjoin the forfeiture of a lease, complainant offered to pay all sums which might be owing by it to the lessor, the decree is a bar to the assertion by the lessor in other litigation of claims which he might have raised and had determined.

10. LANDLORD AND TENANT—*provision in lease for costs and attorneys' fees.* A provision requiring the lessee to pay all costs and attorneys' fees and expenses incurred by the lessor in enforcing the

covenants and agreements of the lease, does not impose liability on the lessee for expenses incurred by the lessor in defending a suit by the lessee, which was determined in the main in the lessee's favor.

11. LANDLORD AND TENANT—*insurance policies.* A lessee on refusal to assign insurance policies on the demised premises, on demand, as required by the terms of the lease, is not liable for the premiums paid by the lessor on insurance then taken out by it, where there is no failure to keep the premises insured, as required by the lease, and the demand was not made under the lease, but under a claim of forfeiture thereof, which was afterward determined adversely to the lessor.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.    Heard in this court at the October term, 1909. Affirmed. Opinion filed October 7, 1912. *Certiorari* denied by Supreme Court (making opinion final).

DEFREES, BUCKINGHAM, RITTER & CAMPBELL, for appellants; RANDOLPH LAUGHLIN, of counsel.

W. S. OPPENHEIM, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Since legal warfare began in 1900 between the former friends and business associates, Edward B. Leigh and Henry D. Laughlin, the attention of this court and of the Supreme Court of the State has been frequently directed thereto. Some of the cases involving the differences between these parties and the interests centering in each, reported in the Appellate and Supreme Court Reports, are the following: Leigh v. Nat'l Hollow Brake Beam Co., 104 Ill. 438; Laughlin v. Leigh, 107 Ill. App. 476; Laughlin v. Leigh, 112 Ill. App. 119; Nat'l Hollow Brake Beam Co. v. Leigh, 119 Ill. App. 344; Laughlin v. Geer, 121 Ill. App. 534; Leigh v. Laughlin, 123 Ill. App. 564; Chicago Railway Equipment Co. v. N. H. Brake Beam Co., 123 Ill. App. 533; Leigh v. Laughlin, 130 Ill. App. 530; Leigh v. Nat'l Hollow B. Beam Co., 131 Ill. App. 106; C. R. Equipment Co. v. N. H. B. Beam Co., 141 Ill. App. 572;

598        APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

Leigh v. American Brake Beam Co., 205 Ill. 147; Leigh v. Laughlin, 211 Ill. 192; Leigh v. Laughlin, 222 Ill. 265; Leigh v. Nat'l Hollow B. Beam Co., 223 Ill. 407; Leigh v. Nat'l Hollow Brake Beam Co., 224 Ill. 76; National Hollow B. Beam Co. v. Chicago Ry. Equipment Co., 226 Ill. 28.

The following cases in addition to the one at bar have been recently taken into consideration by this court and will be disposed of contemporaneously with it:

No. 15,948, Chicago Railway Equipment Co., appellant, v. N. H. B. Beam Co., appellee.

No. 15,949, Chicago Railway Equipment Co. v. Nat'l Hollow Brake Beam Co., appeal of Woods.

No. 15,982, Chicago Railway Equipment Co. v. Nat'l Hollow Brake Beam Co., appeal of C. T. & T. Co.

No. 16,002, Chicago Railway Equipment Co., appellee, v. Nat'l Hollow Brake Beam Co., appellant.

There are others pending, however.

In the various opinions, which make a considerable item in the legal literature of the State for the last few years, the underlying facts of the controversy between the parties have been so often set forth that it cannot be necessary to repeat them in any detail here. Reference by those interested can be made to the opinions heretofore mentioned.

The principal or fundamental dispute to be decided in this particular case seems to us to be rather on the meaning of former decrees, decisions and opinions than whether the decree of the Circuit Court would have been correct had the matter been one of first impression not before adjudicated.

For if, as we think, the action and language of the Supreme Court in National Brake Beam Co. v. The Chicago Railway Equipment Co., 226 Ill. 28, and in The Chicago Railway Equipment Company v. The National Hollow Brake Beam Company, 239 Ill. 111, have either expressly or impliedly determined the fun-

damental questions in this case, the Circuit Court had and this court has no other duty than so to declare, whatever might have been their decision as a matter of first impression. We find ourselves, however, in our view of the law and the facts, in entire accord with what we understand the Supreme Court has decided.

March 21, 1902, the Equipment Co. filed in the Superior Court of Cook County a bill in chancery against the Beam Co. and Laughlin for an injunction restraining them from entering upon the premises occupied by the Equipment Company and removing it or any of its property therefrom, and restraining Laughlin as President of the Beam Company from acting under the power conditionally conferred on him by a previous instrument of demise (called a lease) between the companies, of the date of December 8, 1892, from seizing the books and papers of the Equipment Co., from undertaking to secure and deliver to the Beam Company an assignment and transfer of patents, choses in action, or any other property belonging to the Equipment Company, and from proceeding to declare a forfeiture of said lease of December 8, 1892. The lease or instrument of demise referred to, of the date of December 8, 1892, was an agreement made between and signed by both companies. Under it the Equipment Company on January 1, 1893, took possession of all the property, business and good will of the Beam Co. The Equipment Company was to pay the Beam Company under the agreement $65,000 a year for 15 years in semi-annual instalments. At the expiration of the lease the lessee was to return the real estate and machinery leased, and if it had not already done so, the amount of cash received from the lessor or the balance thereof still unpaid, and of the outstanding accounts turned over to it by the Beam Company, and the amount of the cash price as per inventory of the stock and materials on hand so turned over to it.

600    APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

The Equipment Company had the right from time to time to pay back to the lessor before the expiration of the lease the whole or any portion of the money received by it, in payments of not less than $5,000, and if such payments were made, the semi-annual instalments to be paid as "rental" were to be reduced in an amount equal to six per centum on the amounts so paid back.

A forfeiture of the "lease" in certain contingencies was provided for as follows:

"If the lessee shall fail to pay any instalment of rent for three months after the same becomes due and payable and shall continue in default for three months thereafter (the lessees being given a period of at least six months grace) the lessor shall have the right to declare this lease forfeited, * * *" and "failure of the lessee to comply with any one or more of the other provisions of this lease shall give the same right of forfeiture. * * * in the event lessee shall at any time suffer a forfeiture, lessor shall have the right immediately after such forfeiture * * * to re-enter" the premises "and take possession of the same, together with all the machinery," etc., and "lessor shall thereupon immediately succeed to all the right, title and interest of the lessee therein and thereto. * * * It is the meaning and intent of this provision to make a forfeiture of this lease * * * immediately operate as an assignment and transfer of all its property, real and personal, to the lessor."

In 1898 Laughlin made a proposition to the Equipment Company concerning a reduction of the future semi-annual payments to be made by the Equipment Co. to the Beam Co., in consideration of the immediate payment to him of certain cash and bonds. This proposition was accepted and the immediate payments made by the Equipment Company. The semi-annual "rent" instalments to accrue after 1898 were thereupon reduced to $2,500 each. Laughlin had meanwhile come to an agreement with the Beam Co. concerning the reduction of the payments of the Equipment Co. in consideration of an undertaking of his own with its stock-

holders.   The written communication from Laughlin
to the Equipment Co. containing the aforesaid propo-
sition recited, that the Equipment Company had made
good to the Beam Company all the moneys acquired
through the "lease," but stood still charged with ma-
chinery and office furniture.   Later a dispute arose,
however, concerning the payment of $20,000 of this
money.   It had been ostensibly paid by Leigh for the
Equipment Co. in negotiable paper, which Laughlin for
the Beam Co. contended (and which the Supreme Court
afterward held) was worthless and constituted no pay-
ment.   This became a material matter in previous liti-
gation and is so in the present one.   Before the ques-
tion of this ostensible payment of $20,000 on the
"money account" was raised, however, another dis-
pute of the same general nature had taken form.
There had been payment of $13,500 made on account
of the semi-annual rent instalments (before the new
arrangement, which began Jan. 1, 1899) in three items
of negotiable paper, also afterwards alleged (and held
by the Supreme Court) to be worthless.   Laughlin and
the Beam Company were therefore in 1902 threaten-
ing to declare and enforce a forfeiture of the "lease"
under the provisions of it hereinbefore recited.   This
was the occasion of the bill in chancery of March 21,
1902, we have mentioned.   The bill, after alleging the
dispute about the $13,500 offered to pay that sum and
interest, or any other sum the court might find to be
due, if upon a hearing the court should hold that it was
thus indebted.   A preliminary injunction was issued
in accordance with the prayer of the bill, and, as in
the fall of 1902, leave of court was obtained by the
Beam Company to serve further notices on the Equip-
ment Company for alleged non-payment of rent, the
injunction was, on the prayer of a supplemental bill,
extended to prevent the Beam Company from declar-
ing a forfeiture pursuant to said notices.   These ad-
ditional notices were predicated partly on the non-pay-
ment of a sum, $1,200, on December 31, 1898, a rebate

602 APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

of which the Equipment Company claimed under the terms of the original agreement on account of the ostensible payment of the $20,000 heretofore alluded to, which the Beam Company contended was no payment because made in worthless paper.

After a reference to a Master, a Master's report and further hearing, a final decree was entered in the Superior Court July 29, 1904, on this bill of March 21, 1902, and the supplemental pleadings in the case. That decree found that the ostensible $13,500 and $20,000 payments which were repudiated by the Beam Company were not in fact payments, and proceeds:

It is ordered and adjudged ''* * * that the Brake Beam Company has never accepted any pretended payments in lieu of cash, and that the lease is subject to forfeiture for the non-payment of the rent aforesaid unless complainant voluntarily and within ten days from the entry of this decree shall pay into court for the Brake Beam Company the sum of $19,624.50, together with interest due at six per cent from the date of decree, with costs to be taxed, including attorney's fees if allowed.

''Wherefore this court decrees that there is due from complainant to the Brake Beam Company the sum of $19,624.50, and that unless the complainant shall in ten days from date of decree pay in court for the benefit of the Brake Beam Company such sum with interest and costs of suit, the defendants are given leave to proceed with the forfeiture of the lease and to fully enforce such forfeiture in accordance with the terms of the lease and the injunction heretofore issued shall be and stand dissolved.

''And the defendants are hereby given leave to apply to the court for such additional writs, executions, orders or decrees as may be granted by the court for the enforcement of this decree, and leave is given to the complainant to pay within ten days said sum in court for account of the Brake Beam Company to cover said unpaid rent and costs in order to secure the benefit of this decree. And upon complainant's so doing, the defendants are forever enjoined from further proceeding under either of the notices of forfeiture aforesaid.

"The court further orders that jurisdiction of this case shall be retained for the purpose of determining the rights of the defendants for attorneys' fees under the lease as prayed for by defendant in their petition herein, and for the further purpose of making a proper decree as to the amounts paid into the Union Trust Company under the supplemental bills filed herein, as well as the right of the Brake Beam Company to interest on said several payments."

The $19,624.50 was evidently made up of the $13,500 with interest at six per cent on the same from December 31, 1898, to the date of the decree, and $1,200 with interest from December 31, 1898. The $20,000 was not included, although not paid, because it was not compulsorily payable until the expiration of the lease by time (fifteen years from December 8, 1892) or by forfeiture. Had the Equipment Company accepted this decree, which upon the matter of the injunction prayed for—the only object of its bill—was in its favor, the exact controversy at bar might not have arisen, although doubtless the parties would have found ample scope for their belligerency in other departments of the quarrel. But the Equipment Company appealed from the decree to the Appellate Court, and a new occasion for further litigation arose at once. That litigation in effect has turned largely on how this decree of the Superior Court and its amendments after the cause had reached the Supreme Court should be construed, and what it effected.

The gist of the decision of the Superior Court, as it seems to us, despite the rather peculiar language of the decree, was that the bill was rightly and justifiably brought, that the complainant was entitled to the relief sought provided it washed its hands by incidental payments, which it mistakenly or wrongfully contended that it had already made, but which it offered to remake in any event if necessary to secure the relief prayed for.

It is to be noted that neither the Superior nor the Appellate Court made any formal order continuing

604    Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

the injunction in force pending the appeal other than the final decree, but the Branch Appellate Court on December 8, 1905, in reversing the decree of the Superior Court, awarded without terms, according to the prayers of the original and supplemental bills of complaint, a perpetual injunction against the Beam Company. 123 Ill. App. 533. This was on the ground, held by the Branch Appellate Court well taken by the Equipment Company, that under the circumstances the Beam Company must be held to have received the negotiable paper complained of in satisfaction *pro tanto* of its claims against the Equipment Company.

But meanwhile the Beam Company, presuming on the noncompliance by the Equipment Company during the pendency of the appeal with the portion of the decree which provided that the Equipment Company should, within ten days of its date, as a condition of the perpetual injunction, pay $19,624.50 and interest into court, and relying on the theory that such noncompliance, notwithstanding the pendency of the appeal, gave it leave under the terms of the decree "to proceed with the forfeiture of the lease and to fully enforce such forfeiture," on November 9, 1904, proceeded to declare a forfeiture of the lease, which forfeiture it now in the present case insists was, is and should be valid and effectual to prevent the obtaining of the relief sought by the Equipment Company under the present bill, predicated, as it is, on the provisions and purport of the lease. Counsel for the Beam Company base this position on the two-fold theory that "the forfeiture of the lease was lawfully and rightfully declared while no injunction was in force, and thereby the forfeiture was consummated;" and that "there is a difference between nullification and non-enforcement;" and that an injunction against *enforcing* a forfeiture—for example "reentering and taking possession of the premises"—is not an injunction against so *declaring* a forfeiture as to prevent the lessee from

further taking advantage on its part of the provisions of the demise to and agreement with it.

We think the argument by which these positions are defended ingenious rather than sound, in view of the language and actions of the court of review and of the Superior Court itself in connection with the injunction in question.

After the decision of the Appellate Court awarding an injunction without terms, the Beam Company appealed from it to the Supreme Court. The Supreme Court differed from the Appellate Court as to the payments in the worthless negotiable paper being effectual, and decided that the Superior Court was correct in its conclusions thereon. "Hence," it says, in an opinion filed February 21, 1907, 226 Ill. 28, "we conclude that the decree of the Chancellor was correct and should have been affirmed by the Appellate Court. The judgment of the Appellate Court is therefore reversed and the cause will be remanded to the Superior Court with directions to enter a decree finding there is due to the Brake Beam Company from the Equipment Company the sum of $19,624.50, together with interest on that amount at five per cent per annum from the date of the former decree rendered in that Court and decreeing the payment thereof within thirty days, and that in default the injunction be dissolved." The actual remanding order following this language of the opinion.

On May 8, 1907, the Superior Court entered another decree in the case, reciting the proceedings in the Appellate, Supreme and Superior Courts subsequent to the previous decree, and proceeding:

"That the decree of this court entered July 29, 1904, be and is modified in accordance with the directions of the Supreme Court as follows: That there is due from the complainant, the Equipment Company, to the Brake Beam Company the sum of $22,322.87, and that unless the complainant pay to the clerk of this court for the benefit of the Brake Beam Company said sum

606    APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

within thirty days from the entry of this decree, the injunction shall be dissolved, and except in the matter of the amount to be paid and the times and conditions of payment the decree entered on July 29, 1904, stand and remain of record in full force and effect at all times hereafter as the decree of this court.

"And it appearing to the court that the complainant has paid to the clerk said sum of $22,322.87, as provided in this decree, it is ordered, adjudged and decreed that the Brake Beam Company, its officers, agents and servants be and are perpetually enjoined and restrained as prayed in the complainant's bill of complaint and supplemental bills of complaint, and that they do absolutely desist and refrain from proceeding to enforce a forfeiture of the agreement dated December 8, 1892, set out in said bill of complaint, and from re-entering the demised premises described therein, from removing complainant therefrom, and taking possession thereof, or of any of the personal property of the complainant, as prayed in the bill and supplemental bill of complaint: That Laughlin be and is perpetually enjoined as prayed in the bill of complaint from acting under the powers conferred upon him by paragraph 8 of said agreement dated December 8, 1892, and from undertaking to execute and deliver to the Brake Beam Company or to any other person or corporation as assignment or transfer of any of the patents, letters patent, patent rights, inventions for which applications for patents are pending, choses in action or any other property belonging to the Equipment Company."

From this decree the Beam Company and Laughlin appealed to the Appellate Court. The Branch Appellate Court affirmed the decree. Speaking through Judge Freeman it delivered on the appeal an opinion filed June 16, 1908—141 Ill. App. 572. This opinion stated the view of the Branch Appellate Court fully on the effect of the preceding proceedings, and this court now desires to reaffirm the same. We quote from it, therefore, at length. It says *inter alia:*

"Appellants have filed an elaborate argument in support of the contention that the decree of the Su-

perior Court entered pursuant to the mandate of the Supreme Court is erroneous in view of what as is claimed were the changed conditions since the original decree of the Superior Court was entered, from which decree the former appeals to this and the Supreme Court were taken.   *   *   *   It is said that at the time the original decree of the Superior Court was entered there was only a threatened forfeiture, the declaration of which was enjoined, and that at the time the last decree was entered the forfeiture had been declared and had become a consummated and established fact.   It is argued that the Superior Court 'should have pursued either one of two courses'—either literally followed the remanding order and gone no further, stopped there and said nothing more, or it should have recognized and acted fully upon the changed conditions; that 'it should have done no more than fix the amount due from the Equipment Company to the Brake Beam Company and decree its payment, and should have left all other matters open for further adjudication.'   The ground upon which this contention of the Brake Beam Company is based is that on November 9, 1904, when a forfeiture of the lease to the Equipment Company was declared, pending the former appeal, more than ten days had elapsed after the entry of the decree of the Superior Court, from which that appeal was taken, and the Equipment Company not having then paid the $19,624.50 within the ten days from its date fixed by the decree, and having prayed an appeal from that decree without obtaining an order continuing the injunction in force, said injunction 'had ceased to be in force and effect,' and the Brake Beam Company was therefore entitled to declare and to enforce a forfeiture as it undertook to do; that the appeal did not have the effect of continuing the injunction in force beyond the ten days.   It is claimed that the part of the decree which dissolved the injunction, unless the Equipment Company paid the money into court within the ten days, was 'self executing.'   It appears that the Equipment Company prayed and was allowed an appeal to this court from that decree and filed its

appeal bond of $30,000 within the ten days from entry of the decree. This court reversed the decree of the Superior Court and entered a decree here granting an injunction against the Brake Beam Company. The judgment of this court reversing the decree of the Superior Court was reversed by the Supreme Court, but in the remanding order that court recognized there was an injunction existing and still in full force and effect. That remanding order finds the sum fixed in the original decree appealed from to be due the Beam Co. from the Equipment Company, directs a decree for its payment within thirty days from the entry of such decree, 'and that in default the injunction be dissolved.' If there was no injunction then in force restraining the enforcement of a forfeiture there would have been no occasion so to provide for its dissolution in case of such default.

"The original bill of the Equipment Company prayed an injunction restraining the defendants from proceeding to declare a forfeiture and from re-entering the demised premises. The relief sought was a perpetual injunction. The temporary injunction granted was, as said in Lamber v. Alcorn, 144 Ill. 313-320, 'a mere ancillary writ which the complainant was at liberty to apply for or not, as he saw fit. Its only object was to preserve the *status quo* until a final hearing could be had.' It is therefore unimportant to consider the precise effect of the appeal from the original decree of the Superior Court upon that temporary injunction. *The purpose of the bill was to obtain a permanent injunction. Pending the final determination of that question whatever action the appellant company took pending the appeal was, as further said in Lambert v. Alcorn, supra, 'at the risk of having its acts pendente lite declared illegal and of being compelled to restore everything to the condition in which it was at the commencement of the suit.* See also New Haven Clock Company v. Kochersperger, 175 Ill. 383-395. If, in the case at bar, appellee was entitled to have upon its bill as originally filed a perpetual injunction restraining a forfeiture of the lease, it is entitled to such injunction without reference to whether

the original temporary injunction granted by the Superior Court was or was not dissolved by the decree of that court pending the appeal therefrom to this and finally to the Supreme Court. *The material thing is that the Supreme Court found appellee entitled to an injunction upon payment of the amount due from it to the appellant Brake Beam Company, that it found such an injunction in force and directed in effect that upon making such payment it should continue in force.'* * * * Finding no error the decree of the Superior Court will be affirmed."

Again the Beam Company appealed to the Supreme Court, which in this case affirmed the decision of the Appellate Court on February 19, 1909. Equipment Co. v. Beam Co., 239 Ill. 111. With the language of the Appellate Court in its opinion before it, the Supreme Court thus expressed itself. After reciting the proceedings in the Superior Court on the original consideration of the bill, it said:

"The Equipment Company prayed and obtained an appeal to the Appellate Court and filed a good and sufficient appeal bond in the sum of $30,000 before the expiration of the ten days fixed by the decree for the payment of the money. Upon an appeal to the Appellate Court that part of the decree requiring the payment of $19,624.50 as a condition upon which the injunction would be continued was reversed and the injunction was made perpetual, unconditionally. The Beam Company appealed from the judgment of the Appellate Court to this court and this court in effect reversed the Appellate Court and affirmed the Circuit Court," (the Superior Court is meant) "although the final order did not express this result in the usual terms."

After then reciting the language of the Supreme Court opinion in 226 Ill., Mr. Justice Vickers proceeds:

"The only difference in the degree directed to be entered by this Court and the original decree of the Circuit Court is that the time within which the payment was to be made was changed by our direction from ten days to thirty days."

Then after reciting the decree of the Superior Court entered on May 8, 1907, he again proceeds:

"This final decree was entered on the 8th day of May, 1907. An appeal was perfected to the Appellate Court for the First District, and that court affirmed the decree below. The Beam Company has prosecuted further appeal to this court and assigns numerous causes for a reversal.

"The greater portion of appellant's brief is devoted to questions that are not properly presented for consideration upon this record. A decree entered in accordance with the directions of this court cannot be erroneous. * * * The only question therefore that is open for consideration on the record as presented at this time is, was the decree of the Circuit Court in accordance with the mandate and directions of this court?

"Appellant contends that that portion of the decree of the Circuit Court perpetually enjoining appellant from proceeding to enforce a forfeiture of the lease and from taking possession of the personal property is not authorized by our former decision. *While it is not expressly stated in the remanding order that if the Equipment Company paid the $19,624.50 within thirty days the injunction should be made perpetual, yet that is the clear and necessary implication from the language used in the remanding order of this court. No other reasonable construction can be given to the language used. The Circuit Court and the Appellate Court both so understood the meaning of the remanding order, and we cannot conceive how any other possible meaning could be given to this language.*"

The importance and effect of these expressions is not minimized to our mind by the fact that the opinion afterwards points out the obvious truths that "it is not the province of the court to advise parties in advance what they may or may not safely and legally do upon a hypothetical state of facts," and that "at the risk" of a contempt proceeding the Beam Company could raise the question "whether the original injunction was in force at the time the alleged forfeiture of 1904 was declared."

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

As the Branch Appellate Court said in its opinion, already quoted, we say now, that since, as the opinion of the Supreme Court notes, "The alleged forfeiture of 1904 was declared, if at all, after the present suit was commenced and before it was finally determined," "It is unimportant to consider the precise effect of the appeal upon the temporary injunction. The purpose of the bill was to obtain a permanent injunction. Pending the final determination of that question, whatever action the appellant company took pending the appeal was * * * at the risk of having its acts *pendente lite* declared illegal and of being compelled to restore everything to the condition in which it was at the commencement of the suit."

However wanting in precision and definiteness the language of the orders of the various courts taken together may be, we think that their net result made the action of the Beam Company of November 9, 1904, ineffectual and void, either as an aggressive or defensive measure.

The whole matter is to be considered as though such action had never occurred. No forfeiture of the agreement of December, 1892, has occurred or can now occur. What this means in the determination of the suit at bar we shall now note.

The present suit was begun by the Equipment Company by its filing a bill in chancery in the Circuit Court of Cook county January 3, 1908. The bill sets up, *inter alia,* the lease or agreement of December 8, 1892, and the readjustment of the rent contract or clauses in 1898, and alleges that the Equipment Company has complied with all the terms of the said agreement except that it has been determined that $20,000 of the moneys originally received and payable on or before January 1, 1908, has not been paid and that although tendered the instalments of rent since July 1, 1904, aggregating $17,500, have been refused. It further alleges that the purpose of the original and supplementary agreements between the companies was

the succession of the Equipment Company to the Beam Company and the redemption at par of the outstanding stock of the Beam Company; that the name National Hollow Brake Beam is the trade name known in the business of the Equipment Company, and has become essentially identified with its good will; that it is informed that the Beam Company is about to engage in business as manufacturers of brake beams and place them on the market under the name of National Hollow Brake Beams, and enter into competition with the Equipment Company, and that notwithstanding the express provisions of said agreement and lease that the Beam Company should be prohibited from engaging in business in competition with the Equipment Company at any time prior to January 1, 1908, or at any time within five years from and after that time, should no forfeiture be had of said contract the Beam Company and Laughlin are falsely asserting as a pretext for a violation of said stipulations that the Equipment Company has suffered a forfeiture of its said agreement and lease, and that its stipulations are no longer binding on the Beam Company.

There were other matters alleged in the bill, and details elaborated, but the foregoing statement is sufficient to show the grounds on which the following prayers were made:

(a) That the Beam Company be enjoined from at any time engaging in the business of the manufacture and sale of brake beams and other appliances for railway cars and locomotives.

(b) That the Beam Company be enjoined from at any time directly or indirectly using or employing or permitting others to use or employ the name ''National Hollow Brake Beam,'' or any like name in, about or in connection with the manufacture or sale of brake beams or other appliances for railway cars and locomotives.

(c) That the Beam Company and Laughlin be enjoined from continuing the organization of the said Beam Company and directed by order of the court to

CHICAGO—FIRST DISTRICT—OCTOBER, 1912.   613

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

refrain from continuing business in the name of said Company.

(d)   That a receiver be appointed for the Beam Company, to take charge of its money and property, to pay its creditors, and to distribute its remaining assets among its shareholders (if such shareholders had not already received par for their stock), and to pay the remaining assets to the Equipment Company.

(e)   That an account be taken under the direction of the court of the amount of money and bonds received by Laughlin from or on account of the Beam Company, and that he be decreed to pay the Beam Company what, if anything, shall appear on such accounting to be due from him, with interest.

(f)   For such further general relief as equity may require.

The Beam Company answered this bill and twice amended its answer, and set up at length the relations between the Companies and their history and much of the differences between Leigh and Laughlin.   It relied largely for its defense against the prayers of the bill which were based on the Equipment Company's contentions concerning the construction of the lease of December, 1892, on the position that the rights of the Equipment Company under that lease had been validly forfeited in November, 1904, on account of its default in obligations imposed on it by said lease.

Our opinion already indicated that the so-called forfeiture was invalid and a nullity, disposes of that position for the purposes of our adjudication, and leaves the questions for us as they seem to have presented themselves to the chancellor below—what did the lease require after January 1, 1908, under the circumstances shown in evidence, and under what conditions imposed on and complied with by the Equipment Company should such relief as might be granted against the defendants be given?

The chancellor decreed, not as prayed, (a) that the Beam Company be enjoined from *at any time* engaging

in the manufacture and sale of brake beams and other railway appliances, but that (certain conditions hereinafter described having been complied with by the Equipment Company) it should be so enjoined for the five years after the expiration of the lease on December 31, 1907—that is until December 31, 1912.

We think that this was a correct construction of the "lease" agreement. Its terms meant, in our opinion, that at the end of fifteen years from January 1, 1893, the particular brake beam and railway appliance business of the Beam Company should in the event that no forfeiture had taken place, be the property of the Equipment Company, and that after that time—that is after January 1, 1908—there should be no competition in it by the Beam Company for five years.

The chancellor also decreed under the same conditions that the Beam Company should be perpetually enjoined from using the name "National Hollow Brake Beam" or any like name in, about or in connection with the manufacture or sale of brake beams or other appliances for railway cars or in any way interfering with the good will of the business transferred by the Beam Company to the Equipment Company under date of December 8, 1892.

This also we deem a proper order. We think that the agreement of December 8, 1892, amounted to a lease of the real estate and machinery and a conditional sale of the other property, the patents and good will of the business; and that the "rental," as it was called, payable in instalments, was in effect purchase price for the latter as much as payment for the use and occupancy of the former. The sale was to become absolute if the term of the lease—fifteen years—expired without its forfeiture.

It is the substance of an agreement like this, and not the form, with which equity deals.

The prayers (c) and (d) for an injunction and (e) for an accounting, were not granted and therefore are

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

not matters to be considered in this appeal by the Beam Company.

We have spoken of the conditions imposed on and complied with by the Equipment Company. They were based on the general principle of equity that complete justice and settlement between the parties whose mutual relations are under consideration before the court, should be effected by a final decree if possible.

We have noted that $17,500 of the "rental" accruing after the reduction in 1898, and after the alleged forfeiture in 1904, was unpaid because, although tendered in semi-annual instalments of $2,500, it was refused by the Beam Company. It is manifest that equity required that this should be paid before the relief to be granted the Equipment Company should be effective, and although the bill did not offer to make this payment (apparently upon the theory not now necessary to discuss, that an accounting would show an offset of money due to it as excess over what was sufficient to redeem the Beam Company's stock), yet the decree finds that the Equipment Company produced in open court this sum of $17,500 and offered it to the Beam Company and it was again refused. Thereupon the court ordered the sum to be paid by the Equipment Company to the clerk, and by the clerk to the Beam Company, without prejudice to the right of the Beam Company to appeal from the decree.

There was no error in this. It was a proper disposition of the matter. The Equipment Company urged in this court, before joining in error, that the acceptance by the Beam Company of this money and of the $20,000 subsequently herein mentioned, should prevent the consideration of this appeal; but this contention we negatived in our disposition of the plea by the Equipment Company of a release of errors.

Both right, reason and authority seem to us to justify our decision. Schaeffer v. Ardery, 238 Ill. 557. To hold the contrary would be the limitation of equitable powers by a highly technical rule.

616          APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 595.

The $20,000, which had been ostensibly represented by the "Atkins-Milligan" notes, but which the Superior and Supreme Courts had adjudicated had never been paid (Beam Co. v. Equipment Co., 226 Ill. 28), also became due when the "lease" expired, January 1, 1908. This sum also the chancellor decreed should be paid with interest to the clerk by the Equipment Company and to the Beam Company by the clerk.

Of course the Beam Company having accepted these amounts which were admittedly due, does not complain in this appeal of the portions of the decree which ordered them paid, but it does strenuously insist that the terms imposed thereby on the Equipment Company were not adequate to do justice between the parties, even if the case were a proper one for the exercise of the powers used to give relief to the Equipment Company.

The sixth point of its brief declares that "The Decree appealed from is erroneous in that it fails to require the Equipment Company, though seeking equity, to do equity, and fails to impose equitable terms and conditions upon it."

The first of the terms which it insists should have been and was not imposed was the payment by the Equipment Company of interest on the $20,000 before mentioned for the years 1899 to 1907 inclusive and amounting, with interest, to $14,454. The second was the payment by the Equipment Company of the costs and expenses, including attorney's fees, in various suits mentioned in the decree—notably the forfeiture suits, so-called. These, the Beam Company offered to show, were in excess of $11,000. The third was the payment of an item of $824.27, which the Beam Company alleges it was required to pay for insurance, because of the wrongful refusal of the Equipment Company to comply with a clause of the "lease."

We will consider each of these briefly:

The claim for $14,454, as we think, was properly rejected by the chancellor.

From and after December 31, 1898, the contract made in accordance with the proposition of Laughlin in March, 1898, provided that the ''rental'' should be but $5,000 a year. A valid consideration was given for this agreed alteration in the relations of the parties, and it stands unrescinded. Nor has the Beam Company asked for a rescission. Although the proposition of Laughlin which led to the modification of the contract contained a recital that the Equipment Company had paid back the $158,287.90, while it afterwards was made to appear that this statement was erroneous as far as $20,000 was concerned, yet there is no evidence of any statement by the Equipment Company to the Beam Company, fraudulent, mistaken, or otherwise, that the payment in question of $158,287.90 had been made in full, and we do not think that the validity of the alteration in the agreement and of the new contract in any degree depended on it.

Moreover, although in our view immaterial, we agree with the contention of the Equipment Company, upheld by the chancellor, that the adjudication in the ''forfeiture'' suits foreclosed the right of the Beam Company now to demand this additional money.

The Equipment Company in the ''forfeiture'' suit offered to pay all moneys which might be owing by it to the Beam Company, and certain sums were ordered to be paid by it as a condition of relief. The Beam Compay did not claim in that suit that it had the right after January 1, 1899, to $6,200 a year instead of $5,000, and it is now too late for it to do so. That adjudication embraced all matters properly involved in that suit and which might have been raised and determined in it. In re Northwestern University, 206 Ill. 64, and cases therein cited.

The claim for costs, expenses and attorneys' fees arises from the provision in the ''lease'' of December 8, 1892, that ''the lessee shall and will pay and discharge all costs and attorney's fees and expenses that shall arise from enforcing the covenants and agreements of this lease by the lessor.''

We think, after careful consideration, that the chancellor was right in rejecting it. No suit or proceeding has been brought at any time by the Beam Company to enforce the covenants of the "lease." The costs and expenses claimed arose and were said to have been paid by the Beam Company in litigation brought against it by the Equipment Company, in which, according to our views of the whole matter, previously expressed, the Equipment Company was found in the main to be in the right and to be entitled to a decree in its favor. In each of them the Beam Company was held to be claiming more than was allowed it as a condition of the relief granted the Equipment Company, and threatening unjustifiable action if its claims were not allowed by that company.

Costs and solicitors' fees of this kind are not allowed unless strictly contracted for or the equity is clear and indubitable. We cannot hold that the court below erred in relation to this contention of the Beam Company.

The item for insurance was properly denied. The "lease" provided that the "lessee shall at its own expense keep the buildings, machinery and all personal property insured to the full insurable value, and transfer all policies of insurance to lessor."

And as another clause of the lease provided that at the expiration of the lease the lessee should return and re-deliver the buildings and machinery to the lessor, there is an implication that money received on the insurance of buildings and machinery would go to replace any buildings or machinery destroyed.

It is not contended that the Equipment Company did not "keep the buildings, machinery and personal property insured to its full insurable value," but only that the insurance policies were not transferred on demand, and that in consequence Laughlin on April 23, 1906, took out policies in the name of the Beam Company, and for this insurance up to the expiration of the lease on December 31, 1907, paid $824.27.

But it appears from Laughlin's testimony that this

demand for the transfer of the policies was not made under the contract of lease, but because he contended that the lease had been forfeited and had ceased to exist.  He says that prior to the supposed forfeiture of the lease in 1904, Mr. Leigh held the policies, being treasurer of the Beam Company and treasurer also of the Equipment Company.

We do not think that the failure, under the circumstances, to "transfer" the policies in existence made the cost of the policies taken out by the Beam Company a charge against the Equipment Company.

We do not find any of the assignments of error in this appeal well taken, and the decree appealed against is affirmed.

*Affirmed.*