Henry D. Laughlin, Appellee, v. Chicago Railway Equipment Company and American Trust & Savings Bank, Trustee.
On Appeal of Chicago Railway Equipment Company, Appellant.

Gen. No. 17,943.

1. CORPORATIONS, § 387*—*when corporation is bound by acts of its agents.* A corporation cannot be held to be unaffected by the knowledge and fraudulent acts of a stockholder and director who is not only its treasurer and general manager but its accredited agent in the conduct of its business, by which acts a bondholder is deprived of payment for his bonds.

2. EQUITY, § 76*—*what constitutes laches.* *Held,* that a bondholder was not guilty of laches or ratification in enforcing his claim for payment of bonds and for foreclosure against a corporation, although he had previously stated, through ignorance or deceit, that he was satisfied he had no claim against the Company.

3. ELECTION OF REMEDIES, § 7*—*what constitutes.* Where a bondholder sued an officer of a corporation for certain bonds, in a foreign State, held that such proceeding did not constitute an election of remedies depriving such bondholder of the benefit of the security for the bonds, and the alternative money judgment against the officer was not a bar to an action against the corporation for accounting or foreclosure.

Appeal from the Circuit Court of Cook county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed October 13, 1913.

MUSGRAVE, OPPENHEIM & LEE, for appellants, Chicago Railway Equipment Co.; HORACE KENT TENNEY, of counsel.

DEFREES, BUCKINGHAM, RITTER, CAMPBELL & EATON, for appellee; RANDOLPH LAUGHLIN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

In *Chicago Railway Equipment Co. v. National Hollow Brake Beam Co.,* 173 Ill. App. 595, we commented

*See 'Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

on the contributions to legal literature made by the warfare between the quondam friends and business associates, Edward B. Leigh and Henry D. Laughlin. The present appeal, and that numbered 17,831 in this court, (*post*, p. 280), which will be decided contemporaneously herewith, are additions to the score of causes arising therefrom which have been mooted in the Appellate and Supreme Courts of Illinois. In the opinion in the case alluded to we said that the underlying facts of the bitter controversy between the parties had often been set forth in the opinions to be found in the reports and that this rendered it unnecessary to repeat them in detail. The same may be said in the present case. We shall confine ourselves in this opinion as strictly as possible to the single incident of this continuous legal conflict which gives rise to this litigation.

December 8, 1909, Henry D. Laughlin filed his bill in chancery in the Circuit Court of Cook county against the Chicago Railway Equipment Company and the American Trust and Savings Bank, in which he claimed to be the owner of one hundred and eighty-two bonds of five hundred dollars each, made and executed by the Chicago Railway Equipment Company as a part of six hundred such bonds, divided according to their due dates into series A, B, C, D, E, F, G, H, I, J, K, L and M. Among the further allegations of the bill were these:

The said six hundred bonds were secured by a deed of trust made and executed by the said Chicago Railway Equipment Company under date of June 29, 1898, to the American Trust and Savings Bank as Trustee. Said trust deed (which is made an exhibit to the bill) contains recitals of the negotiations between the Equipment Company and the complainant Laughlin (who is made a third party to the deed), leading to the execution of the bonds and the trust deed and showing the consideration therefor. The bonds were of date of July 1, 1897, and bore interest at five per cent. per an-

num from date to maturity and at seven per cent. thereafter. They were all payable to Henry D. Laughlin or bearer. The property conveyed in trust to secure them was certain real estate, some held in fee and some in leasehold, by the Equipment Company, certain machinery and implements, many letters patent of the United States and of Canada, and certain rights under patent applications, licenses or contracts. The series from A to L of the bonds described were all in any event due by their terms before the filing of the bill. Series M were on their face payable on or before July 1, 1910, but the trust deed contained the following provisions: "If default is made or suffered by said Chicago Railway Equipment Company in the payment of any one or more of said bonds or any one or more of said coupons and such default shall continue for more than sixty days, then and in that event the whole of the principal represented by said bonds shall become immediately due and payable whether due according to the terms or tenor of the bonds or not, if so determined by the holder or holders of as many as one-third of the bonds then outstanding and unpaid, which may be accomplished by simply depositing the bonds with the trustee with written notice of the election of their holders to produce, immediately, maturity.

The right is reserved by said Chicago Railway Equipment Company to at any time pay off any one or more or all the 150 bonds comprising series K, L and M, and to that end it may deposit with the Trustee the amount of the bonds intended to be paid with the interest thereon to that date with interest for 30 days added, and may designate the numbers and series of the bonds to the payment of which the deposit is to be applied, and on receipt of the bonds the Trustee shall pay to their holder or holders the amount thereof with interest and shall cancel and return to the Company the bonds when paid. * * * The party of the first part * * * also covenants and agrees to pay off and discharge at maturity all of the bonds and interest cou-

pons hereinbefore referred to and to do so at the Banking House of the American Trust and Savings Bank in the City of Chicago.''

The condition of defeasance in the trust deed was that if the Equipment Company should promptly pay the bonds and coupons and keep the covenants of the trust deed and of a certain contract with Laughlin of the date of May 18, 1898, the conveyance should become null and void and the property conveyed by it should be released by the trustee at the cost of the Equipment Company. Otherwise the trust deed should remain in full force and effect and on the application of the legal holder or holders of as much as one-third of said bonds then still outstanding, it should be lawful for the trustee to take possession of all property conveyed, and to file and prosecute a foreclosure of the said mortgage trust deed, accounting as usual to the proper parties for the proceeds. The only other provision of the trust deed necessary to mention in connection with these allegations of the bill is the recital that the Equipment Company had executed and delivered the six hundred bonds to the American Trust and Savings Bank for the account of Henry D. Laughlin, but subject to the provisions of the contract between him pursuant to the terms of said contract.

The bill, after reciting the mortgage trust deed and referring to it as an exhibit, alleged the delivery of said bonds to the Trustee and the due recording of said trust deed and its delivery to and possession by the trustee. It then charged that the Equipment Company had defaulted on the covenants of the contract of May 18, 1898, in said trust deed mentioned, by reason of which default various sums had become due and payable to the complainant under the terms of the said trust deed; that of the one hundred eighty-two bonds of which the complainant was the owner, one hundred were of the series M, fifty of series K and thirty-two others, which the complainant was unable more precisely to identify, of the series from A to I, inclusive,

and that the complainant had at all times remained and then was the owner of said bonds; that in January, 1899, he had performed all his obligations under the contract of May 18, 1898, and that thereupon the Equipment Company directed the Bank as trustee to release, surrender and turn over to him the bonds and coupons divested of any trust and of all restrictions as the sole and absolute property of him, the complainant, and that the said American Trust and Savings Bank did accordingly surrender and deliver said bonds and coupons to E. B. Leigh as the agent and fiduciary of the complainant; that no payment of the said bonds or coupons had ever been made and that principal and interest were in default by reason thereof; that although the series M bonds were expressed on their face to be payable on or before July 1, 1910, they might, in case of default continuing for more than sixty days, become due for such default if so determined by the holder or holders of one-third of the bonds then outstanding, which determination might be expressed by simply depositing the bonds with the trustee with written notice of the election of the holders to produce immediate maturity; that the bonds so delivered to Leigh as the agent of the complainant had been wrongfully withheld by said Leigh from him, the complainant, and that in consequence he had been unable, although the legal holder of more than one-third of the outstanding bonds, to deposit the same with the trustee or present them to the trustee for payment, but that he had notified the trustee of the fact of such wrongful detention and that as holder he elected to mature and produce the immediate maturity of all the bonds of series M; that he was unable to bring any of the bonds into court because of the wrongful detention aforesaid, but that so. far as he was able then to do so, he then elected to produce the immediate maturity of the M bonds. The bill further alleges, in connection with the statement concerning the unlawful detention by Leigh of the bonds belonging to the complainant, that Leigh had

at some time gone through a pretense of payment of said bonds and induced the Trustee Bank to mark them paid, but that no valid payment or cancellation was ever made, but that Leigh withdrew from the moneys of the Equipment Company on deposit in the said Bank and wrongfully appropriated to his own use moneys aggregating substantially the amounts payable to the complainant on said bonds and coupons and pretended that the moneys so misappropriated constituted a payment of the bonds. The final allegation of the bill stated that the complainant had requested the American Trust & Savings Bank to prosecute a bill in equity to foreclose the mortgage trust deed, but that the said Bank refused to file or prosecute such a bill.

The prayer of the bill was for an answer, an accounting, a decree against the Equipment Company in favor of the complainant for whatever may be found due on such an accounting and, in default of payment, a decree of sale and foreclosure.

The Chicago Railway Equipment Company answered this bill January 3, 1910, denying generally that the complainant was entitled to any of the relief prayed in his bill, and asserting that under an obligation imposed on it by the contract heretofore mentioned of May 18, 1898, between the complainant and it, to pay off the bonds described therein last becoming due, in case its earnings reached a certain sum in any year, and under a right given to it by said contract to anticipate the payment of any of the K, L or M bonds by depositing with the trustee the amount of the bonds intended to be paid with interest, it paid to the American Trust & Savings Bank as Trustee the sum of $50,-465.75, for the purpose of paying series M of said bonds, and the said Bank as Trustee paid to the holder of said bonds the whole of said amount; also asserting that September 10, 1900, the complainant demanded that the Equipment Company should pay to the American Trust & Savings Bank as Trustee the principal and interest of fifty of series K bonds, and that on October

268        Appellate Courts of Illinois.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 262.

2, 1900, the defendant paid said Bank as trustee $25,-321.92 for the purpose of paying bonds one to fifty inclusive of series K; that the Bank paid the holders of said bonds the money and returned the bonds to the Equipment Company as cancelled; that November 7, 1900, the Equipment Company paid to the Bank as trustee the further sum of $25,547.95 for the purpose of paying bonds fifty-one to one hundred inclusive of series K, and that the Bank paid said money to the holders of the bonds and delivered the bonds cancelled to the Equipment Company.

The answer further alleged that all of the moneys paid by it on account of said bonds were paid to the American Trust & Savings Bank as trustee as provided for in the trust deed, and that the Equipment Company was ignorant and had no knowledge of any of the holder or holders of said bonds, and that the bonds were negotiable instruments payable to bearer and transferable by delivery and the Bank fulfilled its duty and obligation by paying to the holder or holders of said bonds the amount thereof on presentation.

The answer also alleged that the complainant had knowledge as early as November, 1900, of the payments of the K, L, M, bonds; and in January, 1902, stated to the stockholders of the Equipment Company that he was satisfied that he had no claim against said Company and that he believed that the Equipment Company had the right, under its contract, to pay the money to the Bank on account of said bonds, and that thenceforth until the filing of the bill, Laughlin had made no claim against the Equipment Company on account of the payment of said bonds to the American Trust & Savings Bank as Trustee.

The American Trust & Savings Bank filed an answer to said bill, denying or disclaiming knowledge concerning practically each and all of the specific allegations of the bill, the more material affirmative averments of the answer being that "all bonds had been duly paid and cancelled and so marked by the Bank, said pay-

ments having been made to the holders of said bonds as presented to the Bank,'' and ''that when the moneys were deposited by the Equipment Company for the purpose of paying and redeeming the bonds, it applied any and all sums paid to it by the Equipment Company for such purpose to the payment of the bonds and paid to the holders of such bonds, from time to time, as and when the same were presented, all of the said money, and that all such bonds were, when they were paid, duly surrendered and marked cancelled by the Bank;'' that the Bank at no time had any knowledge of the alleged ownership of any of the said bonds by Laughlin; that Laughlin in each instance well knew of all the terms and conditions under which the bonds were paid and cancelled, and that he had for many years had full knowledge of the cancellation and surrender of said bonds and the payment thereof in the manner in which the same were paid, and that as a stockholder of the Equipment Company he took part in its meetings and expressly agreed that the Equipment Company had paid all money necessary to redeem all of such bonds.

Replications having been filed to these answers, the cause was on March 3, 1910, referred to a master in chancery to take proofs and report his conclusions of law and fact therein. January 3, 1911, the master filed his report in said cause, attaching thereto the testimony taken and the other evidence introduced before him.

The master in his report finds that on January 28, 1899, Leigh went to the American Trust & Savings Bank, trustee, and received two hundred and seventy-two bonds of the Chicago Railway Equipment Company, two hundred and seventy-two coupons (being one detached coupon from each of said bonds), and five certificates of stock in Laughlin's name (for 24,798 shares in the aggregate) in the National Hollow Brake Beam Company, and signed the receipt for them ''Henry D. Laughlin by E. B. Leigh.'' Among the

270 Appellate Courts of Illinois.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 262.

bonds thus receipted for by Leigh were one hundred bonds of series K, and the one hundred bonds of series M. He further finds:

"Subsequently to the receipt by E. B. Leigh of the aforesaid bonds mentioned in the foregoing receipt, the complainant, Henry D. Laughlin, demanded the bonds of E. B. Leigh and on July 17, 1900, Leigh refused to give up said bonds. The bonds remained in Leigh's possession under an agreement between Leigh and Laughlin that Leigh would return the bonds upon election to retain his stock in the Beam Company, or that he would make 'a pot and divide' with Laughlin of the profit flowing to both from the 'rent readjustment' transaction. Leigh failed to carry out this agreement and so the bonds remained the property of Laughlin."

The "rent readjustment transaction" mentioned by the master was partly evidenced by the contract of May 18, 1898. It is not necessary herein to describe it further. It is the source of some of the litigation heretofore alluded to and has been often before courts for consideration. The essential part of the above finding, so far as this cause is concerned, is that which asserts the bonds in question to have "remained the property of Laughlin." We are relieved from any consideration of the accuracy of this finding, which is, however, one of the propositions on which this cause turns, because it is *res adjudicata*, so far as Leigh and those who for any reason stand in his shoes are concerned. When the bill in this cause was filed, the ownership of the bonds was in dispute between Leigh and Laughlin, and the Chicago Railway Equipment Company in its answer sets up that although Laughlin had procured a decree against Leigh for the amount of the bonds in the Circuit Court of St. Louis, an appeal was pending in the Supreme Court of Missouri. Before the master's report was made the appeal had been disposed of and the decree affirmed, and the master quotes further on in his report language of the Supreme Court of Missouri concerning the bonds in question

here. The decision is to be found in 226 Mo. 620, and in the clearest possible terms adjudicates the bonds which are involved in the controversy here to have been, in January 28, 1899, and to have remained the property of Laughlin solely. It is not denied by the appellant that as against Leigh the title to these bonds in Laughlin is a settled and decided thing, but it is insisted that the Chicago Railway Equipment Company is·not affected by this, that the bonds were paid by it to the proper party to receive the money, namely, the Trustee Bank, and that what thereafter became of the money paid is a matter between Laughlin and the Bank, with which the Equipment Company has no concern.

Before proceeding with a consideration of the master's report, confirmed and followed by the decree in this case, which as to the series M bonds (the only ones involved in this appeal) is entirely in favor of the appellee and grants the relief thereon prayed for in the bill, we may somewhat narrow the questions to be decided by stating a hypothetical case, differing from the one actually before us only by the elimination of those factors which will hereafter require discussion. If on January 18, 1898, Leigh had been the sole stockholder of the Equipment Company, and if, after receiving from the Bank as the agent of Laughlin, with its knowledge that he was merely the agent of Laughlin, the one hundred M bonds, he had immediately offered these one hundred bonds of series M to the Bank as security for his own note for $50,000, had secured and placed the $50,000 to the credit of the Equipment Company with the Bank, and then, immediately, as Treasurer of the Equipment Company, had drawn his check on the deposit for $50,000 and given it to the Bank, stating that the amount was in payment of the bonds, and if the Bank, receiving it as such payment, had marked the bonds "paid", applied the amount thus ostensibly received on the collateral to the note of Leigh, and delivered the note to him personally and the

cancelled bonds to him as treasurer of the Equipment Company, we take it that no reasonable contention could be made that as against Laughlin, the Equipment Company (which was really Leigh) had paid the bonds and taken from their owner, Laughlin, by this colorable transaction, the benefit of the mortgage conveyance contained in the trust deed.   Whatever might or might not be the recourse of Laughlin against the Bank or Leigh, at his option, he could not thus be defrauded of his rights to the security, and unless circumstances of ratification or laches could be successfully set up by the Equipment Company, it would be without any defense to an action for foreclosure.

The differences between the hypothetical case we have supposed and the actual case we have before us may be thus summed up:   (a)   Leigh was not the sole stockholder of the Equipment Company in January, 1899, nor when the transactions hereinafter mentioned took place in 1900; BUT he was all the time one of its stockholders, a director of it, its treasurer and its general manager.

(b)   Leigh did not immediately offer the one hundred M bonds to the Bank as collateral to his own note for $50,000.   BUT he did so offer forty of them as security for his note of $20,000 on March 21, 1900, and the other sixty as security for his three notes aggregating $30,000 on April 12, 1900.

(c)   He did not *immediately* place the $50,000 to the credit of the   Equipment Company with the Bank; BUT he placed the $20,000 to the credit of the Equipment Company on March 22, 1900, the next day after receiving it, and the $30,000 on April 12, 1900, the same day he received it.

(d)   He did not *immediately,* as treasurer of the Equipment Company, draw his check on the account of the Equipment Company with the Bank to pay (ostensibly) the bonds of the Equipment Company; BUT on September 6, 1900, he did draw his check for $50,-465.75 for such payment.

(e)  The Bank did not, on receiving the amount as such payment, directly apply it to the notes of Leigh; BUT it did on September 6, 1900, mark the bonds "paid", and deliver to Leigh its check as Trustee for $50,465.75, who immediately deposited it in his personal account and gave the Bank his individual check for the same amount, on which payment his notes for $50,000 were delivered to him as fully paid and the bonds delivered to the Equipment Company, which has since held them.

All the affirmative clauses of these propositions— (a), (b), (c), (d) and (e)—are found by the master and by the chancellor, and there is indeed no dispute about them.  We think that if for the moment we postpone consideration of the differences (a) and (b) and assume that no proper distinction can be made between the supposititious case we have described and the actual one before us, because there were other stockholders and officers of the Equipment Company, or because more than a year intervened between the reception of the bonds from the Bank by Leigh as Laughlin's agent and his pledging them with the Bank to secure his own notes, we must conclude that the differences noted in (c), (d) and (e) are of no significance.  The method of accounting adopted in the actual case to bring about exactly the same result supposed in the hypothetical one is not material, nor are the few months interven-. ing between the placing by Leigh of the money secured by his loans to the credit of the Equipment Company and his drawing a check upon that account to pay his notes.

We turn our attention, therefore, to the differences noted under (b) and (a).  We do not deem ourselves called on, in reviewing the decree herein brought before us, to consider the question of how far the rights or liabilities of the American Trust & Savings Bank may be changed, if at all, by the intervention of the. time mentioned in difference (b).  A cross-bill filed by

274 APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 262.

the Equipment Company against the American Trust & Savings Bank is apparently pending undisposed of, which may raise it with other questions concerning the liability of the Bank mooted in the arguments, but the assignments of error on the present decree, which attempt to do so, do not seem to us to demand attention. We may say, however, that there can be no doubt that in January, 1899, the Bank received full notice that the bonds delivered to Leigh belonged to Laughlin. And nothing was, in our opinion, presented in evidence in this cause which made erroneous the finding of the master, repeated in the decree:

"Neither Leigh nor the Chicago Railway Equipment Company is entitled to have the Bank considered as a third person, payment to whom would give immunity to the payor, and justification to the ultimate payee."

And certainly whatever knowledge Leigh had in January, 1899, of the ownership of the bonds of series M, he had in March, April and September, 1900. He was in possession of them at all times. He claimed indeed ownership of some or all of them, but the claim was, as has been stated, finally and decisively adjudicated absolutely unfounded, and he is now considered in law at least to have known it to be so. It is also true that whatever knowledge or notice of their ownership can be properly imputed to the Chicago Railway Equipment Company, on account of Leigh's relations to it, existed as fully in March, April and September, 1900, as in January, 1899.

We are thus brought to the difference between the hypothetical and the actual case stated in (a): "Leigh was not the sole stockholder of the Equipment Company in January, 1899, nor when the transactions hereinafter mentioned took place in 1900, but he was all the time one of its stockholders, a Director of it, its Treasurer and its General Manager." The whole gist of this case, as we view it, lies in the question whether this difference is material. Is the Chicago Equipment Company in a position in which it can successfully

maintain that as an independent corporate entity it is a third party, unaffected by the knowledge which Leigh had of the ownership of the bonds and of the unwarranted and illegal use and manipulation which he was making of them? The counsel for the Equipment Company strenuously contend that it is; that it not only had the option, but was under the obligation to pay these bonds to the Bank as Trustee when it did so, and it and its presumably innocent stockholders, other than Leigh, should not be penalized or compelled to a double payment because its manager and treasurer used his position and the custody of the bonds for Laughlin to his own illegal and unwarranted advantage. The report of the master and the decree of the chancellor negative this contention. The master says: "The Chicago Railway Equipment Company received the cancelled bonds and knew that (first) Laughlin owned the bonds, and (second) that he had not been paid for them, and (third) that it was its intention that he, Laughlin, should not be paid for them. * * * Leigh as the Equipment Company and Leigh as a person drew some checks and caused some entries to be made on the books of the Equipment Company and on the books of himself, but he knew and he, acting as the Equipment Company knew, that Laughlin was not paid on his bonds, and he knew personally, and he acting as the Equipment Company knew, that it was their intention not to pay Laughlin; and they both knew, when the bonds purported to be cancelled, that they had not been paid to the one to whom they belonged, Laughlin; they both knew and still know that Laughlin's bonds have not been paid."

The chancellor finds in his decree: "That all of said acts and transactions and all of said entries evidencing same were made or caused to be made by Leigh acting either as an individual or as an officer of the Equipment Company, and with the fraudulent purpose and intent of depriving the complainant of all benefit of his bonds and of all payment thereon. * * * That

at the time of said acts, transactions and entries, said Leigh knew and said Equipment Company acting by and through him as its officer knew that complainant was the true and legal owner and holder of said series M bonds, and that complainant had not been and was not paid on or for them, and that both said Leigh and said Equipment Company intended that complainant should not be thereby paid for or on them, but on the contrary should be deprived of all benefit of such payment; that the said knowledge and fraudulent intent of said Leigh with respect to the acts, transactions and entries aforesaid of and concerning said bonds was in equity also the knowledge and fraudulent intent of the Equipment Company acting by and through him as its officer in the premises.''

We are in accord with these findings.   The theory of the independent entity of a corporation apart from that of its individual stockholders, and its freedom from results of the fraudulent conduct of its officers have been in equity, as at law, carried far, but we do not think there is authority or reason for holding in this case that the Equipment Company (every action of which in this case was carried out at the dictation and through the direct agency of Leigh, who was not only its treasurer and general manager, but its apparently accredited agent in the conduct of its business and a vitally interested stockholder) can be held unaffected and unbound by his knowledge, his purposes, and his unwarranted and fraudulent action, especially since the contention is, as pointed out by the appellee in argument, not that the Company is liable because of Leigh's actions, but in spite of them.

For this conclusion, if authority is needed it can be found in such cases cited by the appellee as: *First Nat. Bank of Monmouth v. Dunbar,* 118 Ill. 625; *Atlantic Cotton Mills v. Indian Orchard Mills,* 147 Mass. 268; *Loring v. Brodie,* 134 Mass. 453; *McCaskill Co. v. United States,* 216 U. S. 504, and in many others.

Still another reason is thus stated in the decree for

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 262.

holding the Equipment Company unreleased by the ostensible payment of these bonds:

"That in and by said acts, transactions and entries no consideration whatever in fact moved from the Equipment Co. for or on account of or in payment of said bonds  *  *  *."

It was practically the money which Leigh obtained from the Bank on his notes and placed to his credit on the books of the Equipment Company which paid the bonds. These payments to the Equipment Co. by Leigh were apparently voluntary, and under the circumstances of the whole transaction may be not unnaturally presumed to have been made for the purpose of so swelling the bank account of the Equipment Company that its check would be good for the $50,000 payment on September 6, 1900, although it is true that the $20,000 payment was a return of money taken out a day or two before by Leigh for his personal purposes. He seems to have been the sole manager of the finances of the Company. But however this matter of consideration moving from the Equipment Company may be viewed, there is amply sufficient reason in the notice and knowledge of the rights of Laughlin and of the true relations of the parties, which must be attributed to it, to deprive it of any benefit of the actions and transactions of its treasurer ostensibly in its behalf.

There only remains for our consideration the defenses set up by the Equipment Company of ratification and of laches, which as presented by the appellant, although susceptible of distinction, to some extent run into each other. One incident, which it is maintained was ratification, is also argued to be laches in assertion of complainant's claim. It consisted, as stated in the answer of the Equipment Co., as hereinbefore digested, of complainant's statement to the stockholders of the Equipment Co. in January, 1902, that he was satisfied that he had no claim against the Company and believed that the Company had acted within its rights. The master finds in his report that "The evidence does

278    APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 262.

not show that the statement of Laughlin made at the stockholders meeting on January 14, 1902, was made save as the result of his ignorance or as the result of the misrepresentations of the said Equipment Company.'' The decree makes no specific finding as to this statement, but contains the general finding that Laughlin had not been guilty of laches in asserting and enforcing his claim of foreclosure as to the bonds.

We have examined carefully all the testimony in the record on the subject of this statement of Laughlin, reported as made at the meeting in January, 1902, and must agree with the master, or at least cannot feel justified in overruling him and the chancellor in relation to this. There is certainly no clear evidence in it that Laughlin was then so acquainted with what had happened in March, April and September, 1900, as to make any statement of the kind attributed to him conclusive against him in a subsequent attack on what did so actually happen, as evidence either of laches or ratification.

But it is also said that Laughlin's suing for the value of the bonds and receiving an alternative judgment for their value in Missouri in the very case which makes the ownership *res adjudicata* between Leigh and Laughlin, was a ratification of Leigh's sale or pledging of them. The suit in Missouri is spoken of by the Circuit Court of St. Louis, in which it was brought, as ''a suit for the bonds here.'' The judgment order is that the defendant is accountable to plaintiff for the bonds involved (the one hundred M bonds among others), and contains this as the final finding: ''and the Court doth find that the plaintiff is entitled to receive from the defendant said bonds or coupons or the value thereof, which the Court finds to be $119,413.73.'' This was the judgment affirmed by the Supreme Court of Missouri in an opinion reported in 226 Mo. 620. That opinion shows in much detail the pleadings. The prayer of the bill in equity, which was the first of those pleadings, was for a judgment requiring Leigh to ac-

count *and turn over* to plaintiff "these bonds," or to pay him the value thereof.

We do not think that by this proceeding Laughlin made an election of remedies, which deprives him of the benefit of the security for the bonds, which the court adjudged to be his and ordered turned over to him, nor that the alternative money judgment against Leigh, unsatisfied, is any bar to the present action.

The master found, and the chancellor confirmed the finding, that there was no laches on the part of Laughlin in asserting his claim on the bonds or in attempting to enforce the trust deed. We think that this finding was warranted by the history of the litigation and the nature and terms of the bonds and security.

Complaint is made of the fees of the master included in the decree. We do not think it justified.

Our conclusion is that the decree of foreclosure as entered by the chancellor in the Circuit Court should be affirmed.

We are aware that in this opinion, extended although it is beyond the length to which we would wish to have confined it, we have not discussed many of the points in the cause emphasized by the appellant and debated by appellee, nor have we commented on or distinguished the numerous authorities cited in the course of the able and painstaking arguments by which the Court has been assisted. We have not, however, overlooked them in deliberating on the cause, but have endeavored to give to each its due weight and consideration.

The decree of the Circuit Court of Cook county is affirmed.

*Affirmed.*