PETER R. KENNEDY

*v.*

BERTHA AFDAL *et al.*

*Opinion filed October 23, 1907.*

1. JUDICIAL SALES—*good faith is required both by the purchaser and the officer.* Fraud by the purchaser at a judicial sale which prevents competition, or any neglect of duty by the officer making the sale which produces such result, is ground for ordering a re-sale.

2. SAME—*when a sale is properly set aside.* A guardian's sale is properly set aside where the evidence shows that the purchaser and the guardian had arranged to have the land sold to the purchaser at a certain price, regardless of its value, and that in spite of the fact that a higher bid was received the guardian ordered a re-sale, which by trickery resulted in a sale to the purchaser, as had been previously arranged.

3. SAME—*widow's assent to sale operates as an estoppel.* After the widow has voluntarily and without fraud or misrepresentation assented to the sale of her life estate in land of her minor children and the court has ordered the land sold, including the life estate, the widow is estopped to withdraw her consent, and the purchaser at the sale will take a title freed from the life estate, notwithstanding the widow has subsequently quit-claimed the life estate to another person.

4. SAME—*when the widow's quit-claim deed should not be set aside.* Upon setting aside a guardian's sale for fraud of the guardian and the purchaser, if the widow has voluntarily assented to the sale of her life estate and the decree provides for a sale of the land including the life estate, the court should not, at the suit of the minors alone, set aside a quit-claim deed made by the widow after the decree was entered, since the court may order the guardian to convey the simple title unencumbered by the life estate, and no deed from the widow to the purchaser is necessary.

5. COSTS—*when purchaser at sale may be required to pay costs.* Where a guardian's sale is set aside, at the suit of the minors, for the fraudulent and intimidating conduct of the purchaser, which prevented competitive bidding, it is not error to require such purchaser, who is a party to the proceeding, to pay the costs of the proceeding to set aside the sale and also the costs of the sale itself.

APPEAL from the County Court of Boone county; the Hon. L. M. RECKHOW, Judge, presiding.

Knute Afdal died leaving a widow, Martha Afdal, and two minor children, Bertha and Oscar B. Afdal. At the time of his death he was the owner of and resided upon, with his family, a farm in Boone county, consisting of one hundred and seventeen acres. Elisha A. Cook was appointed guardian for the two minor children. There was an encumbrance on this homestead of about $4000. On December 3, 1906, the guardian presented a petition to the county court praying for an order of sale of the lands belonging to his wards. The widow filed her written assent to the sale of her dower and homestead, and on the 9th of January, 1907, an order of sale was entered by the court. The sale was duly advertised to occur on February 4. Before the petition was filed the guardian had consulted the county judge, and had been advised that it would be advisable to find a purchaser who would pay a fair price for the land before taking steps to have it sold. Acting on this suggestion of the county judge the guardian had some conversation with Peter R. Kennedy, a real estate agent in Belvidere, in relation to finding a purchaser for the farm. Kennedy and his partner, Parker, took the matter up with a man by the name of Carlstedt, and made an agreement to procure the farm for Carlstedt at $80 per acre and received $500 purchase money. On January 7 Kennedy made a contract with the widow by which it was agreed that her interest in the premises should be settled for on the basis of $80 per acre, she agreeing to execute a quit-claim deed to Kennedy. On the day of the sale Kennedy met Lane, a prospective bidder for the land, and told him that the land was already sold,—that he had bought the widow's interest. He also informed Lane that if anybody bought the farm they would have trouble. Just before the hour set for the sale Kennedy procured the execution of a quit-claim deed from the widow to himself. He then went to the place where the sale was to occur and addressed the assembled bidders as follows: "What are you fellows down here for? To raise a stink?

I own Mrs. Afdal's interest in that property. The man that buys this farm will bid on a lawsuit. I will sue him for partition that will cost him $400 or $500 before he gets done with it." He also said that a purchaser who bought that land could not get a clear title. These statements, or similar ones, were repeated a number of times in the presence of the assembled bidders. A number of bids were made, the last one by John Seaver, which was $88 per acre. Kennedy asked Seaver if he had the $1000 to make the initial payment. Seaver said that he had a check all filled out except signing and that the check would be honored by the Capron Bank, and that they could telephone to the bank and find out whether the check would be honored. The premises were struck off to Seaver at $88 per acre. Some one was sent to telephone to the bank about the check, and came back and reported that the check was all right and would be duly honored. Thereupon Wood, attorney for the guardian and who was acting as auctioneer, declared that by general consent all bids were declared off, and proceeded to re-offer the land. Upon the second offer the land was started at $75 per acre. Then Kennedy bid $80 per acre. Seaver bid $81 per acre. Immediately after Seaver's bid of $81 per acre, a man who says that he was a friend of Kennedy's and desired to see him get the land, invited Seaver to step aside. While Seaver and this party were engaged in a conversation about thirty feet away from where the sale was taking place, Kennedy bid $81.50 and the auctioneer immediately knocked off the land to him. The auctioneer says that he called the bid three times before declaring the land sold to Kennedy. Seaver says that he did not hear it. Some of the witnesses say that Cook gave Wood a signal to "drop it." The sale was immediately reported to the court, approved and a deed executed, and Kennedy gave his check for $1000 to the guardian.

On the 18th of February the minors, by their mother and next friend, filed a motion to set aside the sale of Feb-

ruary 4 and to recall and cancel the guardian's deed, and by amendment, afterwards made, a prayer for the cancellation of the quit-claim deed made by the widow to Kennedy was included. While this action was invoked by a motion, it was, in fact, a petition, and was so treated by the parties and by the court. The grounds alleged as reasons for setting aside the sale embody all of the facts above recited respecting the conduct of Kennedy and other parties connected with the sale. The guardian filed an answer to the petition, and the court heard it upon affidavits and parol evidence given in open court. The court sustained the petition, set aside the sale, vacated the guardian's deed, canceled the quit-claim deed of the widow, ordered a re-sale, and adjudged that Kennedy pay the costs of the sale set aside and of this proceeding. Before the final termination of the proceedings to vacate the sale Kennedy came in and on his own motion was made a party, and was present in person and represented by counsel on the final hearing. Seaver obligated himself, in open court, to bid $88 per acre for the premises upon a re-sale, and executed a bond in the sum of $3000, with approved security, to secure the performance of his obligation. Cook, the guardian, and Kennedy, excepted to the action of the court, but Cook does not join in this appeal. Kennedy alone brings the case to this court for review, and assigns error upon the action of the court in setting aside the sale and the quit-claim deed and in adjudging the costs against him.

P. H. O'DONNELL, and WILLIAM BIESTER, for appellant.

H. B. STEVENSON, and J. B. LYON, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellant insists that the court erred in setting aside the sale, in vacating the order approving the sale and in setting aside the guardian's deed to him. To this we cannot

assent. Good faith is required in all judicial sales, both by the purchaser and the officer making the same. Everything done by the parties calculated to prevent competition renders such sale void. Any fraud by the purchaser by which competition is prevented, any neglect of duty by the officer producing that result, is regarded as sufficient ground upon which to order a re-sale. (*Longwith* v. *Butler,* 3 Gilm. 32; *Coffey* v. *Coffey,* 16 Ill. 141; *Meeker* v. *Evans,* 25 id. 283; *Quigley* v. *Breckenridge,* 180 id. 627.) In the case at bar the court saw the witnesses and heard the testimony, and the findings in the decree will not be disturbed unless palpably against the weight of the evidence. The evidence as disclosed by the record abundantly sustains the decree. The conduct of appellant, who was a purchaser at the sale, was characterized by fraud throughout the entire transaction. It is evident that he determined to secure this land for $80 per acre, regardless of its value. Before the sale was ordered by the court, he and his partner, Parker, entered into an agreement with Carlstedt to sell him this farm for $80 per acre, and the firm of Kennedy & Parker accepted from Carlstedt $500 on the purchase price almost two months before the day of the sale. He met Lane, who had come to bid on the land, prior to the hour of sale and told him that the farm was sold, and that whoever bought the farm in the afternoon would buy a lawsuit. He procured a quit-claim deed to the interest of the widow on the day of the sale and used this to deter others from bidding. When the sale was ready to begin he addressed the people present in intimidating language, and informed them that he had bought the widow's interest and threatened the purchaser at the sale with a lawsuit. John Seaver bid $88 per acre and the land was struck off to him at that price. Kennedy was still active in the proceedings to the extent of inquiring of Seaver if he had $1000 to pay down, according to the terms of the sale. Seaver offered his check on the Capron Bank for $1000, and at the instance of the guardian the bank was

consulted by telephone, whereupon the bank authorities stated that the check would be honored. The guardian ordered the land re-sold. The evidence of fraud on the part of appellant is so complete and convincing that the court could not in good conscience do otherwise than protect the interest of appellees by ordering a re-sale. Appellant's irregular, unfair and fraudulent conduct disclosed by the evidence in order to get the land at a price less than it was worth, was aided and abetted by others whose fiduciary relations to the minors ought to have led them to use their best efforts to protect the interests committed to their charge.

Appellant insists that the court did not have jurisdiction of his person. There is no foundation for this contention. Appellant came in and on his own motion was made a party and participated in the proceedings and took this appeal. There is no merit in this contention.

It is next insisted that the court erred in setting aside the quit-claim deed made by the widow, Martha Afdal, on the day of the sale. The evidence shows that Martha Afdal entered into the following agreement with Peter R. Kennedy and H. H. Parker on January 7, 1907:

"BELVIDERE, ILL., *January 7, 1907.*

"This agreement made and entered into this day between Martha Afdell, of the town of Boone, county of Boone, and State of Illinois, the party of the first part, and Peter R. Kennedy and Hiram H. Parker, of the city of Belvidere, county of Boone and State of Illinois, parties of the second part. Said Martha Afdell agrees to take her proportionate part of cash, which shall be set aside to her as her interest in the Afdell farm, containing one hundred and seventeen acres, and give a quit-claim to the same at the rate of $80 per acre. Said Peter R. Kennedy and Hiram H. Parker agree to pay said Martha Afdell at the rate of $80 per acre for her interest in said farm. If said farm does not bring $80 per acre at public sale said Peter R. Kennedy and Hiram H. Parker agree to bid $80 per acre for said farm, the terms to comply with the requirements of the court. Said quit-claim deed to be given to P. R. Kennedy and H. H. Parker.

> PETER R. KENNEDY,
> H. H. PARKER,
> per P. R. K.
> MARTHA AFDAL."

This agreement obligated Kennedy & Parker to bid at least $80 per acre for the farm and it obligated Martha Afdal to settle on the basis of $80 per acre for her life estate, and she also agreed to make a quit-claim deed to Kennedy & Parker. This contract is not set aside by the decree of court, nor is there any charge made that this contract was not fairly entered into. The execution of the quit-claim deed on the day of the sale was apparently in execution of this contract. Martha Afdal had executed her assent to the sale of her life estate, and the decree of the court was for the sale of the entire premises free from the life estate of the widow, and the sale had been so advertised. After a decree ordering the sale of the premises free and clear of the life estate, based on the widow's assent freely and voluntarily given, without fraud or misrepresentation, such assent to such sale could not be recalled by the widow. She would be estopped by her own conduct from repudiating her assent after the expense of securing a decree had been incurred ordering the sale of the premises, including the life estate. Kennedy, as grantee in the quit-claim deed, occupied no better position with respect to the sale than the widow, even if the deed were valid for any purpose, which we do not decide. This grantee had actual notice of the decree, and even if he did not, he would be bound under the doctrine of *lis pendens*. If he took anything under such deed and contract it would only be the excess of the widow's interest, if any, figured on the basis of the selling price of the land over the amount of her interest computed on the basis of $80 per acre. If the quit-claim deed is upheld, it is manifest that no one will be injuriously affected except Martha Afdal. She is not complaining. The motion to set aside the sale and this quit-claim deed is made by the minors only. It is not necessary for the protection of the interests of the minors that this quit-claim deed should be set aside. It will have no effect whatever upon their interests, nor do we see how such deed can depress the price on a re-sale of the prem-

ises. The purchaser, upon a re-sale, will obtain a title free and clear of the life estate of the widow, and it can make no difference to the purchaser whether the value of the life estate is all paid to the widow, or a part paid to her and a part to Kennedy under his contract with the widow.

It is suggested that Martha Afdal could not make a quit-claim deed to the purchaser, having conveyed to appellant. This is not necessary. The widow having filed her written assent to the sale of her life estate, the court is authorized to direct the guardian to execute a deed conveying the fee simple title to the whole premises, unencumbered by the life estate.

It is said by appellees that a fraud was practiced upon the widow in securing the execution of this quit-claim deed. Upon this question we express no opinion. We do not regard that matter properly before us.

The order of the court in setting aside the sale on the motion of the minors was properly entered, but the decree setting aside the quit-claim deed by the widow to appellant was improperly made at the instance of the minors.

Appellant complains of the order of the court taxing certain costs against him. The order complained of required Kennedy to pay the costs of the proceedings to vacate the sale and also the costs of the sale which was set aside. There was no abuse of discretion in this order. All the costs of the sale which had to be set aside on account of the misconduct of appellant were properly charged to him, and the costs of the proceedings to set aside the sale should be paid by appellant for the reason that the irregular conduct of appellant made the proceeding necessary in order to protect the rights of the minors. We see no reason for disturbing the order of the court as to the disposition of the costs.

Appellant raises the point that the court should have ordered the guardian to return the $1000 paid on the purchase. Of course, appellant will be entitled to this money,

less the costs adjudged against him, but the court was not required by any pleading in the case to pass on that question, and did not, in fact, make any order in regard to it. That question was not raised or passed on, hence there is no ruling on which error can be assigned.

The order of the court in so far as it sets aside the quitclaim deed is reversed. In all other respects the decree of the county court is affirmed. Appellant will pay all costs.

*Decree reversed in part.*