## Fred M. Blount, Appellant, v. Chicago Railway Equipment Company et al., Appellees.

### Gen. No. 30,424.

1. RESCISSION AND CANCELLATION—*sufficiency of allegation of bill as to tender of consideration.* Where it is alleged in a bill seeking rescission of a contract of sale on the ground of fraud that the ostensible purchaser in the transaction was merely the agent of two conspiring principals, also named as defendants, and that complainant is not advised as to which of such principals furnished the consideration paid by such agent in consummating the sale, but that complainant will return such consideration to whichever of such defendants it shall be made to appear to the court actually furnished the same, the bill was not subject to demurrer on the ground that it failed to allege a sufficient tender of the consideration.

Blount v. Chicago Railway Equipment Co., et al., 242 Ill. App. 69.

2. RESCISSION AND CANCELLATION—*sufficiency of bill to rescind sale upon ground of fraud.* A bill by a trustee in bankruptcy to secure rescission of a sale of the interest of the bankrupt in certain corporate stock, wherein it was alleged that such interest was sold for a wholly inadequate consideration in consequence of false testimony of the bankrupt and a fraudulent conspiracy on the part of such bankrupt and others, designed and carried out for the purpose of securing such stock for themselves at a nominal figure and of depriving the creditors of such bankrupt thereof, held sufficiently to state, as against demurrer, facts from which it could be inferred that the sale in question was fraudulent.

3. RESCISSION AND CANCELLATION—*when bill to rescind sale for fraud not demurrable upon ground of laches.* A bill in equity to rescind a contract upon the ground of fraud is not demurrable upon the ground of want of diligence on the part of the complainant in seeking such relief where the bill alleges that such diligence was prevented by the acts of the defendants whereby the existence of such fraud was effectually concealed from the complainant until shortly before the filing of the bill.

4. RESCISSION AND CANCELLATION—*when trustee not estopped to seek rescission of sale by predecessor of assets of bankrupt for inadequate consideration.* The trustee of a bankrupt is not estopped to seek rescission of a sale of the bankrupt's interest in certain corporate stock by the complainant's predecessor, although ten years have elapsed since such sale, where it is alleged that the former trustee made such sale, for the benefit of creditors of the bankrupt, for a wholly inadequate consideration, in the mistaken belief, induced by the perjury of the bankrupt and the fraud of such bankrupt and his coconspirators, that such stock was of doubtful value, and that the facts as to such perjury and fraudulent conspiracy were effectually concealed from the complainant and from the creditors of such bankrupt during all of such period.

5. BANKRUPTCY—*application of limitation fixed by Federal Act to suit by trustee to rescind sale of bankrupt's assets induced by fraud upon trustee and creditors.* The provision of section 11d of the Federal Bankruptcy Act limiting the bringing of suits by a trustee in bankruptcy to a period of two years after the estate of the bankrupt has been closed, does not preclude such trustee from maintaining a bill in equity, after such period, to secure rescission of a sale by such trustee, in the course of his administration of the estate of the bankrupt, of the interest of the bankrupt in certain corporate stock, where such sale was made for a wholly inadequate consideration in the mistaken belief, induced by the perjury and fraud of the bankrupt and others, that the interest of the bankrupt in such stock was of doubtful value, and knowl-

edge of such perjury and fraud was, by the further fraud of such bankrupt and others, effectually concealed from the trustee and from the creditors of the bankrupt until long after the expiration of such period of limitation.

6. EQUITY—*want of jurisdiction of court of law where cause of action based upon showing of property in hands of defendant equitably belonging to his creditors.* A court of law is without jurisdiction of an action to secure rescission of a contract of sale, the basis of complainant's rights being the statutes and facts from which it appears that the defendants have in their hands property which equitably belongs to their creditors.

7. LIMITATION OF ACTIONS—*inapplicability of statute where cause of action purely equitable.* Statutes of limitations have no application to an action purely equitable in its nature, except under circumstances that would appeal to the conscience of a court of equity.

8. RESCISSION AND CANCELLATION—*when suit to rescind sale by trustee of assets of bankrupt not barred by limitations.* Where a trustee in bankruptcy sold the interest of the bankrupt in certain corporate stock for a wholly inadequate consideration in the mistaken belief that such interest was of doubtful value, a court of equity will not sustain a demurrer to the bill of such trustee seeking rescission of the sale upon the ground that the cause of action is barred by the statute of limitations, where it is alleged that the mistaken belief of the trustee was induced by the perjured testimony of the bankrupt in the proceedings upon his estate and by the fraudulent acts of the bankrupt and his co-defendants thereafter.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Reversed and remanded with directions. Opinion filed October 11, 1926.

AMOS C. MILLER and WILLIAM H. HAIGHT, for appellant.

CUTTING, MOORE & SIDLEY, MAYER, MEYER, AUSTRIAN & PLATT and McKINNEY, LYNDE & GREAR, for appellees; CHARLES S. CUTTING and GEORGE H. GREAR, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the complainant from a decree which sustained the demurrer of defendants and dis-

missed for want of equity his amended bill as amended.

The complainant is trustee of the estate of Edward B. Leigh, who, upon an involuntary petition, was on November 14, 1906, adjudicated a bankrupt. The defendants to the bill are said Edward B. Leigh, the Continental and Commercial National Bank, Harvey C. Vernon, and the Continental and Commercial Trust and Savings Bank.

The subject matter of the suit is 10,000 shares of the capital stock of the Chicago Railway and Equipment Company, a corporation organized under the laws of the State of Illinois, which the bill avers is dominated and controlled by Leigh.

The amended bill as amended avers in apt language the adjudication of the bankrupt; the filing of schedules by him on December 8, 1906; the meeting of creditors thereafter; the appointment and qualification of the Chicago Title and Trust Company as his trustee; the allowance of claims in the amount of $105,507.23 to more than ten creditors; the payment on such claims of 6½ per cent thereof and no more, and the discharge of the bankrupt on July 13, 1916; the presentation of its final account by the trustee; the approval thereof by the United States District Court and the discharge of such trustee on July 3, 1917; the filing thereafter on February 2, 1920, of a petition by one of the creditors, alleging the fraudulent concealment by the bankrupt of this stock and praying the estate of the bankrupt might be reopened; the entry of an order granting the prayer of the petition on August 26, 1920; the ineffectual attempt of defendants to secure a review of this order in the United States Circuit Court of Appeals and in the Supreme Court of the United States, and the entry thereafter on January 11, 1922, of an order by the United States District Court in and for the Northern District of Illinois authorizing the prosecution of this suit.

The bill further avers that at the time of the adjudication in bankruptcy and at the time the bankrupt's schedules were filed, he was the owner of these shares of stock and had been the owner of the same for years prior thereto; that in said schedules he made no mention of these shares except that under Schedule A (4), in which he was required to list the names and amounts of indebtedness of creditors holding notes or other instruments that ought to be paid by parties other than the bankrupts, he said:

" 'Name of holder as far as known

" 'American Trust and Savings Bank

" 'Memo: This bank holds demand notes, renewals of previous notes, signed by Leigh, aggregating $50,-500.00 and secured by 10,000 shares of the Chicago Railway Equipment Company stock, transferred to David S. Geer December 12, 1904, on condition that said Geer assume payment of said notes and save Leigh harmless therefrom, and accept the equity in said stock and notes attached, as payment to him for professional services theretofore performed in "Laughlin litigation." ' "

The amended bill as amended also avers that at the meeting of the creditors thereafter, about January 24, 1907, the bankrupt was examined for the purpose of discovering assets, and he then testified in substance that the American Trust and Savings Bank was the holder of demand notes signed by him aggregating over $50,000 and secured by $100,000 par value of the shares of stock of the Chicago Railway Equipment Company; that said stock was held by said bank as collateral security to said note, and that the stock had been transferred by him, the bankrupt, without reservation, to one David S. Geer, upon the condition that Geer would assume the payment of said notes and accept the equity in the stock in payment of his attorney's fees for services theretofore rendered; that this testimony was untrue, and that in truth and in fact

the bankrupt, on or about December 12, 1904, caused the said shares of stock to be transferred into the name of Geer in order that Geer might appear as the actual owner thereof, but in fact to hold the same as a secret trustee for the benefit of Leigh, which Geer then agreed with Leigh to do and continued to so hold the shares up to the time of his death; that until after the discharge of the trustee in bankruptcy Leigh gave out and pretended he had no interest in the stock and pretended that Geer was the sole owner thereof subject to the lien of the American Trust and Savings Bank for the repayment of its loan of $50,500; that Geer aided Leigh in concealing from all persons except Geer and one other person, who stood in a confidential relationship to Leigh which precluded his disclosure of this knowledge, the fact of such ownership; that the trustee in bankruptcy believed the statement of Leigh as made in the schedule and Leigh's testimony that until after the discharge of said trustee all knowledge as to the true facts was concealed from all persons except Leigh and Geer and one other person, who was also a director of the Equipment Company; that this person about January 7, 1907, received from Geer full information, but as he received the same in the capacity of counsel for Leigh, he concealed the same until the trial of the suit brought by the executrix of Geer's estate in the fall of 1919, the said executrix making claim in said suit to said stock; that until that time the trustee and all the creditors of Leigh were ignorant of any facts or evidence which would tend to disprove the schedule and testimony of Leigh in the bankruptcy proceedings and acquiesced in such sworn statements of Leigh; that after the transfer of the stock from Leigh to Geer dividends were paid by the Equipment Company to Geer, who promptly remitted the same to Leigh; that about the time of the filing of the petition in bankruptcy the American Trust and Savings Bank caused the stock to be transferred

into its own name or into the name of its nominee, and that from that time until about April 1, 1916, the dividends on the stock were paid to said bank and to the Continental and Commercial National Bank, or their nominees, and were applied in reduction of the indebtedness of Leigh, as evidenced by his notes, until April 1, 1916, when by the application of these dividends the said notes had been paid in full and a balance of $581.66, derived from said dividends, then and yet remains with the Continental and Commercial National Bank; that on April 30, 1916, at a sale of the remaining assets of the bankrupt, the then trustee sold to the defendant, Harvey C. Vernon, the undisclosed interest of Leigh in said shares of stock for the sum of $1,000; that this sale was afterwards confirmed by the district court; that prior to the sale Leigh and the Equipment Company arranged and agreed with the Continental and Commercial National Bank that this bank should at such sale have one of its employees, on behalf of and for the benefit of Leigh and the Equipment Company, buy the shares at as low a figure as possible; that pursuant to this arrangement the bank selected Vernon, who was one of its employees, to bid in the shares, and that Vernon in making the purchase acted as the agent of defendants Leigh and the Equipment Company, and that Leigh and the Equipment Company, or one of them, pursuant to the agreement, furnished the purchase price of the said stock to Vernon (which one complainant is not advised); that long before the sale of the stock Leigh and the Equipment Company entered into a fraudulent scheme to secure the same for the Equipment Company or Leigh; that the Equipment Company knew that Leigh was at that time the owner of the stock and had been the owner when the same was transferred to Geer and ever afterwards, and that Geer in his lifetime and Leigh from the beginning of the bankruptcy proceedings and ever since, concealed the ownership for the purpose of de-

frauding the creditors of Leigh; that it was agreed between Leigh and the Equipment Company pursuant to this plan that Leigh would transfer to the Equipment Company the shares of stock in satisfaction of some baseless claim which the Equipment Company was then asserting; that the assertion of this claim was fraudulent for the purpose of establishing the consideration of the transfer of the sale from Leigh to the Equipment Company; that in further pursuance of this conspiracy it was agreed between Leigh and the Equipment Company that Vernon should be induced to purchase the stock at the sale, and Leigh's ownership was concealed until after the sale in order that the purchase of the stock might be consummated for a trifling sum and the facts concealed in the bankruptcy proceedings until the discharge of the trustee; that this plan was successful, and the trustee until after the discharge did not have knowledge of the interest of Leigh in the stock, nor of any evidence tending to prove such fact, nor means of procuring such evidence, nor were any facts brought to the attention of the trustee which would tend to cause the trustee to become suspicious, the facts being at all times concealed by the defendants, or some of them, from the trustee; that at the time of the sale the defendant Continental and Commercial National Bank asserted an alleged lien against said stock for more than half of its value; that the bank was so induced to do by the Equipment Company and Leigh; that the claim of lien was without any basis and was known by the bank and by the Equipment Company and Leigh to be without any basis, and the assertion of such claim was fraudulent and for the purpose of chilling bids at the sale, and that the same did in fact have that effect, and by reason thereof Vernon was enabled to and did purchase the shares for $1,000 when the same were actually worth $100,000 or more; that only after the estate in bankruptcy had been wound up and the trustee discharged did Leigh and the Equip-

ment Company admit or assert the ownership of the stock; that on July 27, 1917, the executrix of the last will and testament of Geer, filed a bill setting up a claim of ownership, as executrix, of said shares of stock, averring that the bank had been paid the claim for which the stock was held as collateral, and asking that the stock be transferred to her as owner; that Leigh answered, alleging the transfer to Geer was colorable only and done at the suggestion of Geer, and alleging that he, Leigh, had been the actual owner of the stock at all times; that the Equipment Company filed its answer in that suit, also averring that Leigh at all times had been the owner thereof; that the trial of this suit occurred in the month of November, 1919, when for the first time the creditors of Leigh (with the exception of Mrs. Geer) learned through a witness, who had also been the counsel of Leigh during the bankruptcy proceedings and during all that time was also counsel and director of the Equipment Company, that Geer shortly before his death had admitted that he held the stock as trustee and as agent for Leigh and had no other interest therein; that because of his confidential relationship said witness had not theretofore disclosed the fact until called as a witness in the suit; that thereupon such testimony not being controverted, the circuit court on the 20th of March, 1920, enter a decree finding that Geer never had any interest in the stock; that after this trial the counsel for Mrs. Geer advised one of the creditors of Leigh of the claim set up in the answers and of the testimony produced on said trial, and that such information was the first information of any kind received by the creditors of Leigh, or any of them, except Mrs. Geer, of the actual facts; that Mrs. Geer first learned of said facts after the filing of the answers in said suit, and being interested adversely to other creditors and a bona fide claimant of the shares, she did not advise said other creditors of the facts set up in the answer; that neither

the creditors nor any of them had any means of acquiring information concerning the ownership of the stock; that shortly after the disclosure upon the trial of the Geer suit, one of the creditors of Leigh, whose claim in bankruptcy proceedings had been allowed, instituted the proceedings in the United States District Court for the reopening of said bankruptcy estate and diligently prosecuted the same until said estate had been reopened; that in the year 1909 the American Trust and Savings Bank transferred its banking business to the defendant Continental National Bank of Chicago; that the notes of Leigh and the said stock were then turned over and delivered to said Continental National Bank, which thereafter consolidated with the Commercial National Bank, whereupon the same became known as the Continental and Commercial National Bank and is still so known; that said stock and notes were delivered into the possession of the Continental and Commercial National Bank and have been held by the said bank from about the year 1910; that by reason of the payment and cancellation of the notes of Leigh, as before set forth, the bank has no further claim by reason of said notes and no right, title or interest in and to said shares of stock held by it as collateral security to said notes; that the Continental and Commercial National Bank now asserts the right to hold the said shares of stock by reason of certain transactions between the American Trust and Savings Bank, now the Continental and Commercial Trust and Savings Bank, and Edward B. Leigh and the Chicago Railway Equipment Company, which transactions occurred in the year of 1900 and were stated to be that prior to that time Leigh borrowed from the American Trust and Savings Bank $50,000, giving as collateral security bonds of the Railway Equipment Company of a certain Series M, to the par value of $50,000; that these bonds were in fact the property of Henry D. Laughlin, which the bank and

Leigh well knew; that thereafter Leigh gave to the Equipment Company $50,000 wherewith to pay these bonds to the American Trust and Savings Bank as trustee and in order that it, as said trustee, might pay the same to Leigh, who was known not to be in fact the owner of the bonds; that the Equipment Company gave its check for the amount of $50,465.75 to Leigh as a part of said fraudulent transaction, and thereupon the check was turned back to the American Trust and Savings Bank by Leigh in an alleged payment of his said indebtedness, whereupon the bonds and the note were canceled, the transaction thus amounting to a cancellation of the bonds belonging to Laughlin without any consideration; that thereupon Laughlin filed a bill to foreclose his lien under these bonds, and that a decree was entered, which upon appeal was affirmed by the Appellate Court; that after the chancellor directed the decree (but before its entry in fact) the Equipment Company filed a cross-bill against the American Trust and Savings Bank, praying that if the finding was in favor of Laughlin, payment should be made out of the money turned over to the American Trust and Savings Bank as trustee in payment of said bonds; that the cross-bill was not filed in good faith, and that since its filing on March 1, 1911, no steps have been taken by the Equipment Company or the Bank to get a hearing thereon, but the same has been allowed to lie dormant for the purpose of clouding the title to this stock.

The decree of the circuit court in that case is appended to the bill as Exhibit "A." That decree was reviewed in *Laughlin v. Chicago Railway Equipment Co.*, 182 Ill. App. 262.

The bill further charges that the Continental and Commercial National Bank now claims a lien against the shares of the Equipment Company stock here in controversy because of an alleged contingent liability of Leigh to it, under a provision in the note of Leigh,

by which the American Trust and Savings Bank was given a lien upon any collateral held by the bank as security for any other liability of any kind whatsoever of Leigh to the bank, but that no claim existed or could exist on behalf of the Equipment Company against the Bank, or any other persons, because of the alleged double payment of the Series M bonds, and that such claim of said bank is not made in good faith, but for the purpose of clouding the title to the Equipment Company stock, and that such is the effect of the decree in *Laughlin v. Chicago Railway Equipment Co.*, hereinbefore set forth.

The bill also avers that on April 30, 1916, prior thereto, and ever since, the interest of Leigh in the said shares of stock was worth at least $100,000 in the open market; that the said stock has a general sale in the city of St. Louis, Missouri, and market quotations were published from time to time prior to the sale and have been so published ever since. The prayer of the bill is that the sale made April 30, 1916, in the District Court of the United States may be set aside, an accounting taken with the Continental and Commercial National Bank or the Continental and Commercial Trust and Savings Bank, and of the dividends which have been paid upon the stock, the complainant offering to do equity and repay the persons entitled thereto the sum of $1,000, being the consideration for said sale which complainant offers to pay into court for the benefit of the persons entitled thereto, and for other and further relief.

The demurrer is general and special, and passing for the present the special reasons assigned, defendants contend that the bill is insufficient because it fails to aver a sufficient tender by the trustee to Vernon of the consideration which he paid for this stock at the sale. On this point defendants rely upon *Rigdon v. Walcott*, 141 Ill. 649; *Dunbar v. American Telephone & Telegraph Co.*, 224 Ill. 9; *Huiller v. Ryan*, 306 Ill. 93,

and other cases which announce the unquestioned and general rule that where a party seeks to rescind a contract of sale for fraud, he must offer to return the consideration which he has received. The rule is unquestioned and based on reasons which are perfectly obvious.

There are, however, exceptions to it, and the technical rules of tender are not so stringently enforced in a court of equity as in a court of law. 26 R. C. L. 625-626. We are not impressed with this contention when applied to the actual facts of this case as alleged in the bill.

The original bill contained an offer to do equity and to return the consideration if the court should so decree. The bill was afterwards amended so as to allege that the money which Vernon paid was furnished by the Equipment Company or Leigh, and offers to pay whichever of the two it should appear actually furnished the consideration. The defendants say that the trustee, complainant, should have gone to the purchaser, Vernon, offered him $1,000, and notified him that the trustee had elected to rescind the contract.

If the allegations of the bill are true, Vernon was simply an agent in the transaction for a principal who could not be accurately identified. Under these circumstances, equity would not, we think, require the complainant to take chances in the matter. The offer in the amended bill to pay the money into court for the benefit of the defendant who should appear to be entitled to it, was, we think, under the circumstances, sufficient even if it is conceded (which we are not disposed at present to hold under the allegations as made by the bill) that conspirators in the perpetration of the kind of fraud which is alleged, would be entitled to receive back the money used in the perpetration of it. *Beidler v. Crane,* 135 Ill. 92; *Thornton v. Hendrickson,* 213 Ill. App. 121, 69 L. R. A. 53.

82        Appellate Courts of Illinois.

Blount v. Chicago Railway Equipment Co., et al., 242 Ill. App. 69.

But aside from other points made, defendant argues that the bill does not allege facts sufficient to justify relief in a court of equity.

It is said that the averments of the bill that the assertion of a lien by the defendant bank chilled bids is averred only as the conclusion of the pleader; that the bill does not name a single bidder or prospective bidder; that the bill does not assert that the defendant bank had anyone attending the sale announcing its claim of lien, as was true in some of the cases cited by complainant; *Coffey v. Coffey*, 16 Ill. 141; *Stoker v. Greenup*, 18 Ill. 27; that the bill does not allege that the then trustee was unfair, as in *Kennedy v. Afdal*, 229 Ill. 295; further, that the allegations of the bill show that the then trustee had full notice of the claim of lien by the bank, and that the trustee was therefore not imposed upon; that if the bids were chilled, as alleged, the trustee, with this knowledge, should have informed the court and asked it not to approve the sale; that the alleged lien was not purely fictitious, and that the fact that the cross-bill was not filed until after the decision of the court was announced and before the decree was entered, does not constitute fraud; that the decree did not purport to adjudicate that controversy; that the sale for $1,000 was fair in view of the fact that the purchaser got only the right to engage in litigation and that the sale of a cloud on a title is quite different from the sale of the title itself; that there was nothing fraudulent in the agreement between Leigh and the bank and the Equipment Company to have Vernon attend the sale and bid on what the trustee had decided to sell. Further, that the mere allegation of the bill that these transactions were fraudulent does not make them so, and that taken as a whole it simply appears that the former trustee undervalued this claim and sold it rather than pursue an inquiry as to the facts; that the predecessor trustee, having made

this definite election, it is inequitable to permit his successor to change it.

There is much that is plausible in these contentions, but it is the whole case rather than any particular part of it that we are called upon to consider. There are many of the acts averred which standing alone would be insufficient to make out such a case of fraud as to require the sale to be set aside, and the case made by the bill is, as the defendants assert, easily distinguishable from most of the cases cited. However, it is rare indeed that facts in cases of this kind will be found altogether similar.

The case stated in the bill would be stronger if it alleged that defendants had some one present at the sale notifying prospective bidders of the claim of the bank to a lien on the stock, but the cross-bill which was filed was of record in a court of general and superior jurisdiction, and presumptively everyone had notice of it. It did in effect say to every prospective bidder, "You buy this stock at your peril," and indeed the defendants (somewhat inconsistently, we think) argue that because of the fact of that litigation the price paid for the stock was adequate. One thousand dollars cannot, of course, be considered an adequate price for stock the market value of which is $100,000.

We cannot agree with the defendants that the allegations of fraud in this bill are stated simply as conclusions of the pleader. On the contrary, a careful reading of the bill has convinced us that the facts from which fraud may be inferred are well stated in the bill. These facts in substance show a conspiracy of which the defendant debtor Leigh was the principal, in which he used the Equipment Company, the defendant banks and their employee, Vernon, as his tools by which the ownership of this stock which, according to the provisions of the statute and in equity, belonged to his creditors, was retained for his own use and benefit.

84    APPELLATE COURTS OF ILLINOIS.

Blount v. Chicago Railway Equipment Co., et al., 242 Ill. App. 69.

If it is granted that the former trustee was not so diligent in running down the conspiracy as it might have been, the averments of the bill are to the effect that such diligence was prevented by the acts of the various defendants through which the ownership of this property was concealed, and by the perjury of Leigh, upon which the bill avers the predecessor trustee relied. The defendants misjudge, we think, the reach and the power of the arm of a court of equity, which is at all times commensurate with the extent of the fraud perpetrated.

Closely related to the foregoing is the further contention that the complainant trustee is on the face of the bill estopped from maintaining this suit. Defendants say (and cite cases so holding) that the trustee in bankruptcy is not bound to take over assets which are onerous or burdensome, and that if he elects not to do so cannot thereafter change his mind and claim these assets. *Dushane v. Beall,* 161 U. S. 513, is cited to this point, and defendants say that even if there had been no sale of this stock under the rule as announced in that case, the trustee, having been advised of the transfer of the stock to Geer, had the right to have the sale set aside, and that it is therefore apparent that the trustee elected to abandon any right of action against Geer, and having so elected and having had notice of his rights and so continued to elect for the space of ten years, the successor trustee is now estopped by that election, which was not in any sense negligence but an affirmative election.

This contention is based on a one-sided and partial consideration of the case made by the bill. The transfer to Geer is only one incident in the case which shows a general conspiracy extending over many years. The transfer to Geer is not, as we conceive it, the gist of the action set up in the bill. How can the conduct of a complainant, shown to have been brought about by the fraud of a defendant, form the basis of an estop-

pel? Granted that the trustee abandoned this property, which was worth enough to pay all the debts of the bankrupt, and granted that there was an election persisted in for ten years, the cause of such abandonment, if the facts alleged in the bill are true (as we must assume), was the false testimony given by the bankrupt and his failure to comply with the affirmative duty which, under the statute, devolved upon him, not only to inform the trustee but to turn over the estate to him. The trustee says, and we must assume that this is true, that he relied on these false statements and this false testimony.

It would be a novel doctrine to hold that one who believed and relied on the sworn testimony of a defendant in a court where the statute cast upon the defendant the duty of making a full disclosure was thus estopped. Fraud like this vitiates all it enters into, and no matter what the form of it may be, a court of equity will look through to the reality. The successful fraud of a defendant cannot form the basis of an estoppel.

It is contended that the demurrer was properly sustained because the suit was barred by laches and by certain statutes of limitation applicable.

In the first place, it is suggested that section 11d of the Bankruptcy Act, which provides, "Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed," is a complete bar to this suit.

The United States District Court, the United States Circuit Court of Appeals, and the Supreme Court of the United States necessarily passed on that question adversely to defendants' contention when considering the petition of the creditors to reopen the estate of the bankrupt. While these respective decisions are perhaps not conclusive as to all of these defendants, they are indeed persuasive. On this point the complainant

relies on *Bilafsky v. Abraham*, 183 Mass. 401, and defendants rely on *Kinder v. Scharff*, 231 U. S. 517.

These decisions are not necessarily conflicting, and they can be easily distinguished from the instant case, in that (again assuming, as we must, that the averments of the bill are true) the bankrupt and some other defendants actively planned to fraudulently conceal the cause of action. The court expressly says in *Kinder v. Scharff, supra*, that such cases are to be distinguished from the case there considered.

It will hardly be contended, we think, that section 11d places an absolute limit on the time within which the estate of a bankrupt may be reopened, since other sections of the Bankruptcy Act provide that this may be done without any limitation as to time.

The bill here charges that the cause of action was concealed from the trustee and the creditors by false testimony and other means, and that the trustee and the creditors relied upon the false representations by which the concealment was perfected and were thereby deceived and injured. If these facts alleged are true, the creditors and trustee were imposed upon, and it is clear, we think, that section 11d was not intended to give repose in such cases.

Again it is urged that if any cause of action ever existed in favor of complainant, it is barred under section 15 of chapter 83 of the Illinois Revised Statutes. See Smith-Hurd Rev. Stat., page 1647 [Cahill's St. ch. 83, ¶ 16]. That section provides that the causes of action therein enumerated are barred, unless the suit is commenced within five years after the cause of action accrued. But it is conceded that a court of equity is not in all cases bound to apply the statute of limitations. It has been held that it will do so in cases where the action in equity is analogous to an action at law or where the cause of action is one of which a court of law would have concurrent jurisdiction. In any case, of course, in conformity with the maxim that equity follows the law, a court of equity will act in obedience

to the statute unless there is some reason which takes hold of the conscience of the chancellor and prevents. *Hancock v. Harper*, 86 Ill. 445; *Quayle v. Guild*, 91 Ill. 378.

Defendants say that the complainant's cause of action must be based on one of two rights—first, that of having enforced in complainant's favor a constructive trust in the stock transferred by Leigh to his attorney Geer; or, second, upon the theory that as representing Leigh's creditors, the trustee may assert the right of creditors to have that transfer set aside as to them, because of its fraudulent character.

The first question is not raised by the representative of Geer, however. It is not necessary, we think, to consider whether the statute would be applicable in case it was raised by her.

Under the facts alleged Leigh and Geer both intended to defraud. Leigh could not enforce a trust as against Geer or his representatives. *Cochonour v. Ratcliff*, 223 Ill. 274. But that fact is immaterial in a suit brought by a judgment creditor or trustee in bankruptcy. They are not precluded by the fraud of their debtor. The rights of the trustee here are similar to those of a complainant in a creditor's bill, and the basis of such a complainant's right is the statutes and facts from which it appears that defendants have in their hands property which equitably belongs to the creditors.

A court of law would not have jurisdiction, nor is this analogous to such a case as *Becker v. Billings*, 304 Ill. 190, where the gist of the action was alleged negligence of the director of a bank. On the contrary, the action is purely equitable and statutes of limitation have no application, except under circumstances that would appeal to the conscience of a court of chancery. A court of chancery does not apply such a statute ordinarily nor permit the defense of laches to be interposed in cases where a defendant has property in his hands which equitably belongs to a complainant. That

is the situation which exists here, if the facts alleged in the bill are true. The bill says that all the defendants took the stock and held it with knowledge of the complainant's rights and that they conspired together to keep the creditors from obtaining the property to which they were entitled.

Whether the statute would or would not be applicable as to others, we need not inquire. It will not be interposed to shield defendants who stand in the position of those described in the bill.

The brief of the defendants, which we are persuaded leaves nothing unsaid which could be said in defendants' favor, points out that in the cases cited by the complainant a fiduciary relationship existed which prevented the court from acting in obedience to the statute of limitations. We do not think that it can be successfully contended that the duty which is cast upon a bankrupt debtor to disclose to his trustee the extent of the estate is not a fiduciary one. If not in fact so, it is at least analogous to such a relationship, and the other defendants who assisted in the plan by which the creditors were defrauded do not stand in a better position than the bankrupt himself. Such was evidently the view of the United States courts when the bar of the Federal statute was lifted and the estate reopened. The bar of the Federal Statute of Limitations has been lifted. The bar of the State statute should not be permitted to interpose.

It is perhaps unnecessary to say in conclusion that we have of necessity assumed on this record the existence of all facts well pleaded in the bill. The hearing will disclose the facts.

The court erred in sustaining the demurrer and the decree will therefore be reversed and the cause remanded with directions to proceed in conformity with the views expressed in this opinion.

*Reversed and remanded with directions.*

McSURELY, P. J., and JOHNSTON, J., concur.